## UNITED STATES

### v.

### Airman Jeffrey S. HOLLIS, FR 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 United States Air Force.

### ACM 23820.

U.S. Air Force Court of Military Review.

Sentence Adjudged 29 Oct. 1982.

Decided 26 Aug. 1983.

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Alexander S. Nicholas.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert, and Captain Brenda J. Hollis.

Before HEMINGWAY, CANELLOS and RAICHLE, Appellate Military Judges.

## DECISION

HEMINGWAY, Senior Judge:

The accused was charged with attempting to rape Airman Basic K.E.P., "in conjunction with Airman First Class Vernon D. Fields," near Denver, Colorado. By appropriate exceptions and substitutions, the court found the accused not guilty of attempted rape but guilty of indecent assault by forcefully and without her consent pulling off the victim's pants and underpants, "in conjunction with Airman First Class Vernon D. Fields." The accused's adjudged sentence extended to a bad conduct discharge, confinement at hard labor for fifteen months, total forfeitures and reduction to airman basic. The convening authority reduced the confinement to seven months but otherwise approved the sentence.

The trial of Airman First Class Fields commenced on 26 October 1982. After considering a stipulation of fact and hearing oral argument, the Military Judge Max Bowlden dismissed the attempted rape charge against Fields for lack of subject matter jurisdiction. We refused to grant the government extraordinary relief from that ruling, *United States v. Bowlden*, 16 M.J. 878 (A.F.C.M.R.1983), as did the Court of Military Appeals, *United States v. Bowlden*, 16 M.J. 103 (C.M.A.1983). The trial of the accused in the case *sub judice* began on 27 October 1982 before Military Judge,

Donald B. Strickland. After hearing considerable evidence and argument, Judge Strickland found subject matter jurisdiction vested in the court-martial.

The accused now contends that the charge should be dismissed for lack of subject matter jurisdiction and that the government is bound by the jurisdictional ruling of Judge Bowlden in *United States v. Fields.* We disagree and affirm.

During the hearing on the jurisdictional issue, the parties stipulated that:

Airman Basic K.E.P. came on active duty in the United States Air Force in May 1982 and has continued on active duty until the present. She arrived at Lowry Air Force Base, Colorado on 7 July 1982, and was assigned to the 3421 School Squadron, her present organization. Shortly after her arrival she was disenrolled as a student and processing began for her administrative separation from the Air Force. While awaiting separation she was assigned duties as a dorm guard in her barracks, Building 413 on Lowry AFB. Her duty hours were 0600–1800 every other day. Shortly after arriving at Lowry AFB, AB P met A1C Vernon D. Fields. He came up to her and introduced himself while both were eating in the base dining hall. A1C Fields came on active duty in the Air Force on 16 February 1982 and has continued on active duty from that time until the present. During the following weeks, AB P. and A1C Fields occasionally went off-base socially. On two occasions A1C Fields and AB P. accompanied other military members to City Park in Denver, Colo., where they talked and drank beer. On these occasions, Amn Jeffrey S. Hollis was in the group that went to City Park. AB P. met Airman Hollis through these other military members who were also stationed at Lowry AFB. Amn Hollis came on active duty in the Air Force on 8 April 1982 and has continued on active duty from that time until the present. AB P. had no other contact with A1C Fields and Airman Hollis since they were both students who resided in barracks other than hers (Building 412 and 415 respectively). Both A1C Fields and Airman Hollis were assigned to the 3421 School Squadron, their present organization. They performed no duties with AB P. Each of the three individuals knew that the other two were members of the same unit. Also, prior to 31 July 1982, she had no other social contact with Amn Hollis. Neither A1C Fields nor Airman Hollis ever had sexual relations with AB P., and she did not have a poor reputation for chastity on Lowry AFB.

On 31 July 1982, AB P. was working her assigned tour of duty as dorm guard. Near the end of that shift, A1C Fields came up to her while she was working and showed her some pictures of their previous outing. She completed her tour of duty as dorm guard at about 1800 hours and was not scheduled for duty as dorm guard again until 0600 hours on 2 August 1982. At about 1945 hours on 31 July 1982, A1C Fields personally contacted her at her barracks (she had no private phone) and asked her if she wanted to go drink some beer at City Park. She stated that she had intended to go to the Airman's Club but agreed to meet him in the parking lot. Shortly thereafter, she met A1C Fields and Airman Hollis in the parking lot. After some discussion, she agreed to go with them to City Park. Neither A1C Fields nor Airman Hollis was scheduled for work that night. All three were not on leave but were lawfully away from Lowry AFB. A1C Fields drove them to City Park in his vehicle, which was registered on Lowry AFB at the time. There they drank some beer and some rum and coke and talked for about three hours. The group decided to go to a nightclub, so they left City Park and drove to "The Lift", also in Denver, Colorado, where they each had one drink during the approximately thirty minutes they stayed. After leaving "The Lift", the threesome drove around for a while and ended up driving towards the mountains near Denver. A1C Fields stopped at the Mother Cabrini Shrine, a public place located in the mountains 25 to 30

miles west of Lowry AFB. The Shrine is the place where the acts constituting the alleged offense occurred. After the incident, all three returned in A1C Fields' vehicle to Lowry AFB in the early morning hours of 1 August 1982. A1C Fields and Airman Hollis reported for their assigned duties on 2 August 1982. AB P. reported to her duty section on 2 August 1982 at about 0530 hours, at which time she reported the incident to her supervisor, who in turn put her in touch with Lowry AFB Security Police. Because of the alleged incident, AB P.'s supervisor offered to allow her to have the day off. AB P. stated that she would prefer to stay busy and that she would work her shift when she returned from the Security Police. AB P.'s supervisor detailed a person to take AB P.'s place as dorm guard while she was at the Security Police. When AB P. returned from the Security Police in the morning on 2 August 1982, she resumed her duties as dorm guard.

The victim also testified that she probably would not have accompanied the accused and Fields if they had been civilians. The victim's commander testified that there was a general concern about this incident in his squadron and that a failure to prosecute the case would adversely impact on the morale of his unit. The office of the local district attorney advised military authorities that the prosecution of the case "would be most appropriately left in the hands of the Air Force." *

The military judge made extensive findings of fact and concluded that the military had a distinct and greater interest in the prosecution of this case than did civilian society. We concur in that conclusion. *United States v. Lockwood,* 15 M.J. 1 (C.M.A.1983); *United States v. Fortenberry,* 14 M.J. 505 (A.F.C.M.R.1982), *aff'd,* 16 M.J. 195 (C.M.A.1983); *United States v. Lampani,* 11 M.J. 632 (A.F.C.M.R.1981), *aff'd,* 14 M.J. 22 (C.M.A.1982).

That the jurisdictional ruling was different in the trial of the accused than it was in the trial of Fields is of no benefit to the accused. "The doctrine of res judicata provides that a matter put in issue and finally determined by a court of competent jurisdiction cannot be disputed between the *same parties* in a subsequent trial...." MCM, 1969 (Rev.), para. 71*b* [emphasis added]. The accused and Fields are neither the same party nor are they in privity. These cases were separate trials and different evidence was presented in each on the jurisdictional issue. Even if Fields and the accused had been charged with conspiracy to commit this crime, and tried in separate trials, the ruling in the Fields case would not inure to the accused's benefit. *United States v. Garcia,* 16 M.J. 52 (C.M.A.1983).

Accordingly, the findings and sentence are

AFFIRMED.

CANELLOS, Judge, concurs.

RAICHLE, Judge, absent.

### APPENDIX

Office of the District Attorney

First Judicial District

NOLAN L. BROWN

DISTRICT ATTORNEY

October 7, 1982

Major Billy Smith, Jr.
Chief, Military Justice
Department of the Air Force
Headquarters Lowry Technical
Training Center (ATC)
Lowry Air Force Base, CO 80230

Dear Major Smith:

Pursuant to our conversation this date, I am writing to inform you that this office does not intend to pursue prosecution of (ATC) Vernon D. Fields and Airman Jeffrey S. Hollis for the attempted sexual assault of (AB) K E. P on July 31 and August 1, 1982. As was stated during our conversation there are many reasons for this deci-

---

* The full text of the district attorney's letter is set out in the appendix.

sion. Initially, I would note that in no way do we intend to denigrate the seriousness of this offense. However, in light of the manner in which the offense was perpetrated, as well as the parties involved, our office feels that prosecution would be most appropriately left in the hands of the Air Force.

Primarily, the factors which have entered into this decision are as follows:

1. All parties involved—that is, both the defendants and the victim, are military personnel.

2. The initiation of the events which led to the assault occurred on the premises of Lowry Air Force Base.

3. It appears that the vehicle in which the victim was transported is registered at Lowry Air Force Base. Said vehicle may become important for evidentiary purposes.

4. All initial reports were taken by military personnel.

5. All follow-up investigation has been performed by military personnel.

6. Proceedings have begun in the military courts based on a proper assumption of jurisdiction by military authorities. A change of jurisdiction at this late date would provide for an unnecessary delay that would create additional emotional strain for both the victim and the defendants. Further it would be an impediment the speedy resolution of the charges against the defendants.

7. No law enforcement agency in Jefferson County has been involved in any aspect of this case. To attempt to change jurisdiction at this point would mandate a duplication of efforts by both the law enforcement agencies and the courts involved. Such an unnecessary duplication would be in direct conflict with the ideals of judicial economy and careful allocation of tax payers dollars.

In summary then Major Smith, it is the feeling of this office that this case should remain in the military justice system—thus we decline to proceed with prosecution in Jefferson County. We appreciate your time and the consideration you have given this case and wish you a just determination in the proceedings. If there is any further assistance we can offer please feel free to call on us.

Sincerely,
/s/ Mary A. Malatesta
Mary A. Malatesta
Jefferson County
District Attorney,
Intake