**UNITED STATES, Appellee,**

v.

**Private (E–1) John W. MAUCK, SSN 185–54–7271, United States Army, Appellant.**

**CM 443819.**

U.S. Army Court of Military Review.

16 April 1984.

Colonel William G. Eckhardt, JAGC, Colonel R. Rex Brookshire II, JAGC, Major Stephen R. Dooley, JAGC, and Captain Richard W. Vitaris, JAGC, were on the pleadings for the appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, Captain Thomas E. Booth, JAGC, and Captain Richard G. Mann, Jr., JAGC, were on the pleadings for the appellee.

Before MOUNTS, YAWN and WERNER, Appellate Military Judges.

OPINION OF THE COURT

YAWN, Judge:

Appellant is before this Court convicted of larceny, maiming, forcible sodomy and

---

1. Accord, *United States v. Stout,* 1 U.S.C.M.A. 639, 5 C.M.R. 67 (1952).

attempted murder, violations of Articles 121, 124, 125 and 80, Uniform Code of Military Justice, 10 U.S.C. 921, 924, 925 and 880, respectively. His approved sentence provides for a dishonorable discharge, confinement at hard labor for fifteen years, and total forfeitures. He argues that the court-martial lacked jurisdiction over the subject matter of the charged offenses since they occurred off-post. For the purposes of adjudicating the question of jurisdiction at trial, the following facts were agreed upon:

On or about 4 January 1982 Billy Ray Hutcherson and John W. Mauck reported to Redstone Arsenal, Alabama. Hutcherson and Mauck were assigned to the 8th Student Company. Several days after reporting to Redstone Arsenal, Mauck and Hutcherson became acquainted with each other. Prior to 22 January 1982, their acquaintance had grown into a friendship. Not long after coming to Redstone Arsenal, Hutcherson met Julie [F.], the dependent daughter of a military retiree. Julie's family lives only a short distance from the Redstone Arsenal boundary line, near gate 5. Julie had many friends who were service members. Moreover, Julie frequented and socialized at the Enlisted Man's Club and at other locations on Redstone Arsenal.

On various occasions Julie talked with Hutcherson at the Enlisted Man's Club. Their acquaintance soon blossomed into an intimate friendship. Their resulting sexual acts all occurred at Redstone Arsenal. On the night of 21 January 1982, Hutcherson and Julie engaged in sexual intercourse in the 8th Student Company billets. On the morning of 22 January, Hutcherson may have told Mauck about the sexual affair that had occurred the previous evening with Julie. On the afternoon of 22 January, Mauck met Julie through his friend Hutcherson. Plans were made to go out on the town in Huntsville, Alabama, the evening of 22 January 1982. Since Mauck did not have a date, and since he was [a] good friend of Hutcherson, Julie agreed to arrange a blind date for Mauck. On the same afternoon of 22 January 1982, Mauck drove Julie to her home while Hutcherson showered and changed into civilian clothes. Upon returning to post, the three of them, all dressed in civilian clothing, went to dinner at the unit mess hall where they met service members Buck, a friend of Mauck and Hutcherson, and Linda [G.], a friend of Julie's.

After dinner the five of them went to the Enlisted Man's Club where they consumed beer and danced. Some time later, all five left the Enlisted Man's Club and went to a local beverage store off post and purchased two quarts of Jack Daniels which they passed around inside the car. The party then went to the Sunshine Lounge, Huntsville, Alabama, where they continued to drink Jack Daniels. About midnight, Mauck learned that his blind date was not going to show up and he became very enraged. Consequently, Mauck and Hutcherson decided to drive Julie [F.] home. While en route Mauck and Hutcherson continued to argue with and execrate Julie for the failure of his blind date to show up. The argument became so intensified that Julie got out of the car twice. Finally, Mauck drove to an abandoned road approximately 15 feet outside the boundary line of Redstone Arsenal, at secured Gate 5. All parties exited the car, leaving the lights on. It was here that Julie was sodomized and brutally and violently beaten.

Mauck and Hutcherson left Julie's naked, beaten, maimed, and bloody body in the freezing rain. They believed Julie was dead. After everything occurred at Gate 5, Mauck and Hutcherson returned to Redstone Arsenal. On 3 February 1982, Mauck and Hutcherson were arrested by the Huntsville Police Department. On 19 February 1982, Mauck and Hutcherson were indicted by the Madison County Grand Jury for assault and sodomy of Julie [F.]. On 5 May 1982, Hutcherson was tried in the circuit court of Madison County and found guilty of assault in the second degree and sexual abuse in the second degree. Hutcherson was sen-

tenced to serve fifteen years at hard labor in the Alabama penitentiary. In early July 1982, the District Attorney's Office of Madison County nol prossed Mauck's case.

We hold there was jurisdiction and affirm.

The basic law on this issue is found in *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), and *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). In *O'Callahan,* the Supreme Court held that courts-martial lack jurisdiction over the subject matter of an offense unless it is "service connected." *Id.* at 279, 89 S.Ct. at 1694. Such jurisdiction was found lacking in *O'Callahan* because O'Callahan's offenses, attempted rape and related crimes, were committed off-post while he was on pass and within the Territory of Hawaii; there was no connection between the offenses and his military duties; he was not in uniform; and his victim had no ties to the military. Relford, on the other hand, raped both a military dependent and an employee of the post-exchange on the post where he was stationed. A unanimous Court found the offenses service connected, and clarified *O'Callahan* by holding "that when a serviceman is charged with an offense committed within or at the *geographical boundary* of a military post and violative of the security of a person or of property there, that offense may be tried by a court-martial." *Relford v. Commandant,* 401 U.S. at 369, 91 S.Ct. at 657 (emphasis added). The Court recognized, however, that some offenses perpetrated off-post could be service connected, and, in particular, quoted Winthrop for the proposition that they even included offenses committed upon or against civilians near a military post. *Id.* at 368, 91 S.Ct. at 657, *citing with approval* W. Winthrop, *Military Law and Precedents* 724 (2d ed. 1896, 1920 reprint). *See also United States v. Williams,* 17 M.J. 207, 216 (C.M.A.1984) (kidnapping of serviceman on or adjacent to Fort Hood, Texas, service connected); *United States v. Daye,* 17 M.J. 555 (A.C.M.R.1983) (attempted larceny from serviceman in close proximity to post service connected); *United*

*States v. Brauchler,* 15 M.J. 755 (A.F.C.M.R. 1983).

Recognizing that the question of jurisdiction will turn on the unique facts surrounding the commission of an offense, the Court said,

> [A]ny *ad hoc* approach leaves outer boundaries undetermined. *O'Callahan* marks an area, perhaps not the limit, for the concern of the civil courts and where the military may not enter. The case today marks an area, perhaps not the limit, where the court-martial is appropriate and permissible. What lies between is for decision at another time.

*Relford v. Commandant,* 401 U.S. at 369, 91 S.Ct. at 657. *Schlesinger v. Councilman,* 420 U.S. 738, 760, 95 S.Ct. 1300, 1314, 43 L.Ed.2d 591 (1975).

As might be imagined, the issue of jurisdiction over the subject matter of an offense remained an unsettled area of military law for some time after *O'Callahan* and *Relford. See generally United States v. Trottier,* 9 M.J. 337, 340–45 (C.M.A.1980); Cooper, *O'Callahan Revisited: Severing the Service Connection* 76 Mil.L.Rev. 165 (1977). However, recent pronouncements by the Court of Military Appeals somewhat settled the muddied waters. For example, the Court concluded "that almost every involvement of service personnel with the commerce of drugs is 'service-connected.'" *United States v. Trottier,* 9 M.J. at 350 (footnote omitted). *See also Murray v. Haldeman,* 16 M.J. 74, 80 (C.M.A.1983) (serviceman's wrongful use of drugs while on extended leave far away from any military installation is service connected if he later enters a military installation while subject to any physiological or psychological effects of the drug). Moreover, the Court recently held that a serviceman's status of unauthorized absence when he commits an offense is a factor tending to establish the service connection of that offense, even if committed off-post. *United States v. Johnson,* 17 M.J. 73 (C.M.A.1983). Most importantly, though, the Court articulated the guiding principle that "the conduct of servicemembers which takes place outside a mili-

tary enclave is service connected and subject to trial by court-martial if it has a significant effect within that enclave." *United States v. Lockwood*, 15 M.J. 1, 6 (C.M.A.1983). The effect of an offense is measured by its impact upon the persons assigned to the post and the morale, reputation and integrity of the post itself. *Id.* at 10.

The border of a military post is not a demarcation line where court-martial jurisdiction ends. The fact that the appellant's crimes were not committed within the borders of Redstone Arsenal does not, when considered in the totality of the circumstances, exempt him from trial by court-martial. The appellant and his victim became acquainted as a result of his military status. The victim, a dependent daughter of a military retiree living just off the post, was a member of the military community. On the evening in question, they met and socialized on the post where the appellant was stationed, then left with other military personnel for additional socializing. Finally, after the offenses were committed, the appellant and his confederate returned to the post, leaving what they thought was a dead body "approximately 15 feet outside the boundary line" of the post. *See United States v. Mitchell*, 2 M.J. 1020 (A.C.M.R. 1976), *pet. denied*, 3 M.J. 105 (C.M.A.1977).

We find that these offenses were committed "at the geographical boundary" of a military post and were violative of the security of persons therein, and that the appellant's conduct had a significant effect upon that enclave. We also note that 10 U.S.C. 1071 *et seq.*, authorizes medical care at military treatment facilities for dependents of retired personnel, and the record reflects that a portion of the victim's medical care was performed in the medical facility at Redstone Arsenal. *See United States v. Dimas*, 12 Mil.L.Rep. (Pub.L.Educ.Inst.) 2053 (NMCMR Nov. 18, 1983). The role played by the State of Alabama in this case had no effect on our decision. We presume this sovereign state had good and sufficient reason to prosecute Hutcherson but not Mauck, just as we presume the convening authority in this case had good and suffi-

cient reason to prosecute Mauck but not Hutcherson.

The findings of guilty and the sentence are affirmed.

Senior Judge MOUNTS and Judge WERNER concur.