**UNITED STATES**

v.

**Airman Ramel R. SHORTE, FR 151–58–6020, United States Air Force.**

**ACM 24218.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 30 July 1983.

Decided 11 May 1984.

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Major Richard A. Morgan.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Major Robert E. Ferencik, Jr.

Before HODGSON, FORAY AND O'HAIR, Appellate Military Judges.

DECISION

HODGSON, Chief Judge:

The sole issue before us is whether the military has jurisdiction over a felonious assault off-base by one military member against another.* The accused, citing *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and cases directly linked to that landmark holding, argues that his offense is not sufficiently "service connected" to justify trial in a forum which does not provide him the benefits of indictment by grand jury and trial by petit jury. He concedes that the military justice system has much improved since the *O'Callahan* decision, but nevertheless urges that it still does not provide many of the important safeguards found in the civilian community. We find the crime

---

\* The accused was charged with assault with the intent to commit murder; the convening authority approved the lesser included offense of aggravated assault. He was sentenced to a dis- honorable discharge, confinement at hard labor for three years, forfeiture of all pay and allowances, and reduction to airman basic.

at issue to have a "service connection" and affirm.

The record established that the assault occurred in Victorville, California, approximately four and one half miles from George Air Force Base. There were three witnesses to the assault: the victim, Senior Airman Martin; the accused; and the accused's wife, Tammy, whose father was stationed at George Air Force Base. The accused and Martin first met in September 1982, when Martin gave the accused a ride. Later they had casual contact and each knew the other was stationed at George. Martin dated Tammy prior to her marriage to the accused in April 1983.

As Martin was leaving the base on the evening of 3 May 1983, he saw the accused and his wife in a car ahead of him. Apparently, Martin began "tailgating" the accused's car, and when he pulled along side some remarks were made, but neither could understand the other. The "tailgating" continued as both cars left the base with Martin being in front. Ultimately, both cars stopped and the accused and Martin got out. Again words were exchanged and the accused stabbed Martin in the upper left chest and cut him on the left side of the neck. These injuries required Martin to be hospitalized for 12 days. The incident was investigated by the San Bernardino County District Attorney's Office which declined to prosecute due to perceived evidentiary problems.

 It is hornbook law that for a military court to have jurisdiction the offense must be "service connected." *O'Callahan v. Parker, supra; Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). This "service connection" is determined on a case-by-case, offense-by-offense basis. *United States v. Sims,* 2 M.J. 109 (C.M.A.1977). The limits of an Air Force Base are not boundary lines where court-martial jurisdiction ends. Offenses occurring off-base still may possess sufficient "service connection" to justify trial by court-martial. *See United States v. Lowery,* 13 M.J. 961 (A.F.C.M.R.1982). For example, off-base drug offenses appear, as

a rule, to be "service connected." *United States v. Trottier,* 9 M.J. 337 (C.M.A.1980); *Murray v. Haldeman,* 16 M.J. 74 (C.M.A. 1983); *United States v. Fitzhugh,* 14 M.J. 595 (A.F.C.M.R.1982), *pet. denied,* 15 M.J. 165 (C.M.A.1983). We also find meaningful the Court of Military Appeals' observation in *United States v. Lockwood,* 15 M.J. 1, 6 (C.M.A.1983) that "the conduct of servicemembers which takes place outside a military enclave is service connected and subject to trial by court-martial if it has a significant effect within that enclave."

Appellate defense counsel contend the Government's assertion of jurisdiction is bottomed primarily on the military status of the accused and the victim a concept which was rejected by the Court of Military Appeals in *United States v. Hedlund,* 2 M.J. 11 (C.M.A.1976). They also argue that notwithstanding indications that the Court of Military Appeals has expanded the limits of military jurisdiction, until *Hedlund, supra,* is directly overruled, there can be no finding of "service connection" in the accused's case.

 We need not speculate whether *Hedlund, supra,* was overruled by implication in *Trottier, Murray v. Haldeman or Lockwood,* all *supra.* We base today's holding that military jurisdiction exists on the fact that the military has a distinct and greater interest in the prosecution of this case than does the civilian community. *United States v. Hollis,* 16 M.J. 954 (A. F.C.M.R.1983), *pet. denied* (C.M.A.1984). While court-martial jurisdiction cannot be predicated solely on the military status of the parties involved, it is a factor to be considered. *United States v. Hedlund, supra; United States v. Martin,* 3 M.J. 756 (A.C.M.R.1977), *aff'd,* 5 M.J. 219 (C.M.A.1978). Likewise, it is significant that the parties' conduct on base was the catalyst that began the chain of events that shortly thereafter resulted in the assault under review. *Cf. United States v. Allen,* 3 M.J. 986 (A.C.M.R.1977), *aff'd,* 7 M.J. 345 (C.M.A.1979). Finally, it is of no little importance that Martin was hospitalized for 12 days and thus was not available to per-

form his military duties. All of these circumstances make a compelling argument that the interest of the military far outweighs that of the civilian community so as to justify trial by court-martial. *United States v. DeCoster*, 11 M.J. 775 (A.F.C.M.R.1981); *United States v. Brown*, 8 M.J. 501 (A.F.C.M.R.1979).

■ The jurisdictional limit of a court-martial has not remained static; it has ebbed and flowed throughout the history of the armed forces. It reached its nadir with the *O'Callahan* decision which made "service connection" the basis for military jurisdiction, but the precise employment of this term is not immutable. As Chief Judge Everett indicated in *United States v. Lockwood, supra,* at page 10:

> [T]he criteria for service connection should be reexamined periodically in light of changes in the conditions under which the Armed Services perform their assigned missions and the accompanying changes in the impact of off-post crimes upon their ability to accomplish those missions.

An assault with a dangerous weapon by one servicemember on another, regardless of where it occurs, has a clear and measurable impact on the morale, reputation and integrity of the installation. For the reasons stated, we conclude that the court-martial could properly try the offense referred to it. *United States v. Hollis, supra; see generally United States v. Campbell*, 16 M.J. 886 (A.F.C.M.R.1983); *United States v. Mauck*, 17 M.J. 1033 (A.C.M.R.1984); *cf. Peterson v. Johnson*, 569 F.Supp. 1467 (E.D.Mich.1983). The findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge, O'HAIR, Judge, concur.