UNITED STATES of America,
Plaintiff-Appellee,

v.

Kenneth W. DYER, Elliot A. Lyn, and
Robert George Schmitt,
Defendants-Appellants.

No. 84–3021
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Feb. 8, 1985.

Carl H. Lida, Miami, Fla., for Lyn.

Robert J. Buonauro, Orlando, Fla., for Schmitt.

Before GODBOLD, Chief Judge, KRAVITCH and HATCHETT, Circuit Judges.

GODBOLD, Chief Judge:

All defendants were charged in Count I with conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 846, and in Count II with possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Defendant Schmitt was convicted on both counts, Dyer and Lyn on only Count I, the conspiracy count.

I. Reliance upon the LaRue report

Schmitt's sole defense was that he was insane at the commission of the offense in August and September 1983. His wife testified that he had suffered a severe head injury in 1975. Both she and her daughter testified that they had observed marked differences in his behavior since then, and in their opinion he was insane.

Dr. Gutman testified for Schmitt that, based on review of Schmitt's prior medical history and two consultations with Schmitt, it was his opinion that Schmitt was not able to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. During the direct examination of Dr. Gutman, counsel for Schmitt was allowed to inquire about previous medical treatment and diagnoses of Schmitt rendered by psychiatrists, including Dr. Marianne LaRue. Counsel asked: "Was he [Schmitt] ever found by her [Dr. LaRue] to be legally insane?" The government objected on the ground that this was a conclusion, not a diagnosis. The objection was sustained.

The government's rebuttal witness, a psychiatrist, Dr. Kirkland, testified that he reviewed Schmitt's medical records, listened to tapes of Schmitt made at the time of the acts charged in the indictment, and personally interviewed Schmitt, and on the basis thereof concluded that Schmitt was legally sane at the time of the offense. On cross-examination defense counsel questioned Dr. Kirkland about a five-page medical history of Schmitt given by Dr. LaRue and used by Dr. Kirkland in arriving at his opinion. The report described Schmitt's appearance, reactions, attitude, and Dr. LaRue's diagnosis. It contained no opinion by Dr. LaRue of Schmitt's sanity. The government did not object to this cross-examination. The same applied to the diagnosis in a letter from a Dr. Bailey.

Dr. Kirkland was then asked whether in arriving at his ultimate opinion in Schmitt's case he "took into consideration" a report from Dr. LaRue in a letter dated November 3, 1977. Dr. Kirkland responded affirmatively, and defense counsel then attempted to get into evidence the opinion of Dr. LaRue that Schmitt was insane when he allegedly committed another offense in May 1977. This occurred:

Q Did you take that [the letter] into consideration in arriving at your ultimate opinion in this case?

A Yes, sir.

Q You have a copy of that in front of you?

MR. CALVACCA [prosecutor]: I'm going to object. This report is conclusory in its tone. I don't think it's appropriate.

MR. BUONARO [Schmitt's counsel]: Judge, the Government asked the doctor if he relied on these medical reports.

MR. CALVACCA: He's indicated he's relied on it.

THE COURT: You may ask him.

BY MR. BUONARO:

Q The second paragraph of that it says at the time of the accident, May 25th, 1977—

MR. CALVACCA: Objection. That is a prior matter not before the Court. He's referring now to another arrest, and the doctor is finding with respect to that arrest. I don't think that's relevant to this trial.

MR. BUONARO: Judge, it's something that the doctor—

THE COURT: Let me see it.

Mark it for identification. Objection sustained.

The letter, addressed to the attorney representing Schmitt in the present case, says:

Dear Mr. Buonauro [sic]:

Re: Robert Schmitt

This letter is in response to the request for information from you regarding the above named patient, and also in response to the patient's authorization for me to release information to you.

At the time of the incident on May 25, 1977, for which charges have been filed against the above named patient, it is my opinion that the patient was unable to tell right from wrong as a result of his emotional illness specifically Psychosis associated with brain trauma, chronic.

Schmitt contends that he was entitled to introduce Dr. LaRue's opinion, stated in the November 3 letter, that Schmitt was unable to tell right from wrong in May 1977, as impeachment of Dr. Kirkland, because Dr. Kirkland had testified that he relied on the letter. The letter contained both underlying factual data—Dr. LaRue's diagnosis in 1977—and Dr. LaRue's opinion on the ultimate question of Schmitt's sanity in 1977. The question whether Dr. Kirkland "relied on the letter" was sufficient to make the LaRue diagnosis admissible. But the opinion of Dr. LaRue on Schmitt's sanity was not admissible unless and until Dr. Kirkland testified that in forming his opinion of Schmitt's sanity in 1983 he relied upon or considered the November 1977 opinion of Dr. LaRue. Medical personnel frequently rely upon the diagnoses of other medical personnel, and if relied upon, they may be admissible in impeachment though hearsay. But it is far less likely that medical personnel, in reaching their own opinions concerning ultimate issues such as sanity, will rely upon opinions reached by other medical personnel on those same legal issues. To ask Dr. Kirkland whether he "relied upon" or "considered" a medical report by another doctor without differentiating between the underlying diagnosis described in the report and the opinion on an ultimate legal issue stated in the report was, whether or not so intended, a trap for the witness and court and an inappropriate way in which to present to the jury the opinion of an expert not available for cross-examination. The ruling of the court was correct. *Bryan v. John Bean Division of FMC Corp.*, 566 F.2d 541, 546 (5th Cir. 1978).

Dr. Gutman was not asked whether he relied upon or considered any LaRue report in reaching his own opinion. The single question asked him was unrelated to any basis for his opinion but was a straightforward inquiry seeking to elicit the opinion of another doctor. The opinion of another cannot be put before the jury in this fashion.

II. The restricted scope of defendant's direct and cross-examination

■ The government played for the jury a tape of a conversation between Schmitt and Agent Ball, a part of which follows:

Schmitt: Three people, and you know, that's what ya'll don't want to have.

Ball: No, I don't, I don't want to meet a bunch of people.

Schmitt: No, well, you don't ever want to see people. [three people?]

\* \* \* \* \* \*

Then that, that's conspiracy. When there's only two people, then you say the other guy conspired and he'll say he didn't. It's equal, see?

Blount: Yeah.

Schmitt: But if you got two against one then, then they got ya. Anytime there's three people.... (Exh. 3).

On cross-examination by Schmitt, Ball acknowledged that he recalled the conversation. He was then asked if Schmitt's statement accurately reflected the law of conspiracy.

On re-direct of Schmitt's expert witness, Dr. Gutman, the following occurred:

Q. Now, if an individual—the Prosecutor asked you—understanding of the law—has an understanding of the law, it may show that he has an ability, a consciousness and ability to distinguish right from wrong?

A. It can be, yes.

Q. What is the reverse of that coin? What if his understanding of the law is incorrect, if he thinks the conspiracy is something which it really isn't?

MR. CALVACCA: Objection, Your Honor.

THE COURT: Sustained.

There was no error in the above rulings. Agent Ball was not competent to testify on whether Schmitt accurately stated the law of conspiracy. The question to Dr. Gutman, even if otherwise appropriate, depended upon the prior establishment of a predicate that Schmitt's statement of the law of conspiracy was correct. No such predicate had been laid; it had been attempted in the examination of Ball, and the court correctly declined to permit him to testify on the law.

■ However, there was more to come. Dr. Kirkland, the government's expert, was cross-examined on his opinion that at the time of the offense Schmitt had the capacity to distinguish between right and wrong. This occurred:

Q. Did you hear any taped conversations with respect to Mr. Schmitt discussing with the undercover agents, purported to be drug dealers, with respect to what the law of conspiracy entails and how you got to watch out for conspiracy? Did you hear that?

A. Yes.

MR. BUONARO: Your Honor, the Court wouldn't let me go into that with Dr. Gutman.

THE COURT: I think Dr. Gutman went into all of that.

MR. BUONARO: I tried to ask him about that.

THE COURT: Found out at length what was on the tape.

MR. BUONARO: No, sir, the question was about the law of conspiracy. The Court sustained the objection. I'm objecting on the same basis.

THE COURT: Not talking about the law of conspiracy. He's asking what he suggested. It's a different point.

You may answer.

BY MR. CALVACCA:

Q. In your opinion as a psychiatrist, what significance, if any, did Mr.

Schmitt's suggestion about conspiracy have with respect to your determination about his knowing right from wrong?

A. It suggested he clearly understood the law about such matters and was prepared to break them.

Schmitt contends that the government was allowed to do what he was forbidden to do, that is, to utilize Schmitt's understanding of the law of conspiracy as part of a predicate for an ultimate conclusion on the issue of whether Schmitt understood the difference between right and wrong.

The court analyzed correctly the matter of the cross-examination of Dr. Kirkland. He was not asked whether Schmitt correctly stated the law of conspiracy but, first, whether he heard what Schmitt said, or as paraphrased by the court what Schmitt "suggested." The district attorney's succeeding question was not in terms of the substantive legal correctness of what Schmitt said but of the effect of what he said (without regard to whether or not it was legally correct). Dr. Kirkland's answer went beyond the question and responded in terms of whether Schmitt *did* understand the law of conspiracy, i.e., that conspiracy law as Schmitt understood it was correct and that he was prepared to break that law. There was, however, no motion to strike the answer as unresponsive or as beyond the scope of the question.

In view of all the other testimony pro and con on Schmitt's sanity at the time of the offense, Dr. Kirkland's single expansive answer, related to differences in understanding about the law of conspiracy, was not plain error requiring reversal. Indeed, it is arguable that Schmitt's comments were really directed to problems of proof of conspiracy at trial; possibly they stated his view that when there is one government witness testifying against the defendant, he may get out, but if there are two witnesses to one "then they got ya." So read, Schmitt's statement would tend to prove sanity rather than lack of it.

### III. Dyer and Lyn

■ The contention by Dyer and Lyn that the evidence was insufficient to con-

vict them of conspiracy is frivolous. Nor does their acquittal on the substantive count affect the validity of their convictions on the conspiracy count.

 Admission in the government's rebuttal case of evidence that defendants say the government had stipulated it would not use was not error. The court did not err in holding that the stipulation permitted use of the evidence in rebuttal and that it was offered for rebuttal purposes. Even if the court had mischaracterized the evidence, a stipulation on the admissibility of evidence concerns a question of law for the court and is not binding on the court. *Noel Shows, Inc. v. U.S.*, 721 F.2d 327, 330 (11th Cir.1983).

 The court correctly found that there was sufficient evidence of conspiracy to permit statements of co-conspirator Schmitt to be introduced against Dyer and Lyn. The court was not required to make this determination pretrial. *U.S. v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

There was no error in the denial of Dyer's and Lyn's motions to sever.

AFFIRMED.