**UNITED STATES**

v.

**Senior Airman Michael A. ROA, FR 564–19–5349, United States Air Force.**

**ACM 24730.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 14 Nov. 1984.

Decided 18 July 1985.

Appellate Counsel for the Accused: Colonel Leo L. Sergi, Captain Timothy J. Malloy and Major Francis T. Lacey, USAFR.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Lieutenant Colonel Donal F. Hartman, Jr.

Before HODGSON, FORAY and MURDOCK, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

Following mixed pleas, the appellant was convicted in a bench trial of burglary, larceny, housebreaking, making a false oath and multiple derelictions of duty in violation of Articles 129, 121, 134 and 92, U.C.M.J., 10 U.S.C.A. The approved sentence extends to a dishonorable discharge, confinement for four years, forfeiture of $397.00 per month for 48 months and reduction to airman basic. Appellate defense counsel have asserted five errors. While none require remedial action, an extended discussion of some is warranted.

### I

■■■ The appellant, citing *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969) and *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), contends that his off-base offenses, i.e., burglary and larceny involving two Air Force officers assigned to his squadron, lacked the required "service-connection" to give the military jurisdiction.

*O'Callahan, supra,* the most restrictive of the Supreme Court's decisions on jurisdiction over off-base offenses, was decided in 1969. Since that time, the term "service-connection" has been the subject of varying interpretations. In *Relford v. Commandant, supra,* the Supreme Court identified 12 considerations for determining "service-connection," but pointedly withheld judgment that they were all-inclusive. The reason for their unwillingness to go farther became apparent in *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), when the Court, expressing a belief that the military courts should have the freedom to determine for the military services the limits of service connection, stated:

[The issue of service connection] turns in part on gauging the impact of an offense on military discipline and effectiveness, on determining whether the military interest in deterring the offense is distinct from and greater than that of civilian society and on whether the distinct military interest can be vindicated adequately in civilian courts. These are matters of judgment that often will turn on the precise set of facts in which the offense has occurred. *More importantly, they are matters as to which the expertise of military courts is singularly relevant, and their judgments indispensible to inform any eventual review in Art. III courts.* (Emphasis supplied)

At page 760, 95 S.Ct. at page 1314.

The Court of Military Appeals has accepted that apparent mandate by significantly expanding jurisdiction over off-base drug offenses. *Murray v. Haldeman,* 16 M.J. 74 (C.M.A.1983); *United States v. Trottier,* 9 M.J. 337 (C.M.A.1980). Further, in *United States v. Lockwood,* 15 M.J. 1, 10 (C.M.A.1983), the Court observed that:

[T]he criteria for service connection should be reexamined periodically in light of changes in the conditions under which the Armed Services perform their assigned missions and the accompanying changes in the impact of off-post crimes upon their ability to accomplish their missions.

The Court also stated in *Lockwood* that "the conduct of service members which takes place outside a military enclave is service connected and subject to trial by court-martial if it has a significant effect within that enclave." Whether a service connection exists is a factual determination. *United States v. Shorte,* 18 M.J. 518 (A.F.C.M.R.1984), *pet. granted* 19 M.J. 120 (C.M.A.1984).

In the case *sub judice,* the appellant was a member of a ring that burglarized the off-base quarters of officers assigned to his unit. A key member of the ring was an

Air Force captain whose access to a duty roster insured that no one would be home when they broke in. Thus, the military status of one of the appellant's accomplices provided meaningful assistance in the commission of the offenses. While not conclusive, the military status of the parties involved is a factor to consider when ascertaining jurisdiction. *United States v. Shorte, supra.* Further, it is apparent that the interest the military has in the prosecution of this case is far greater than that of the civilian community.* There is no doubt that these offenses, although committed off-base, had a significant adverse impact on the morale and discipline of the affected organization. The use of the organization's duty roster in the planning stages, plus the victims and the major culprits in the offenses being in the same unit, provide, in our view, a clear "service connection." To determine otherwise would be to abrogate the responsibility for maintaining discipline within a military unit to a civilian instrumentality not designed for that purpose. For the reasons stated, we conclude these offenses were "service-connected," and a court-martial was the proper forum to resolve the question of guilt or innocence. *United States v. Shorte, supra,* and cases cited therein.

## II

■ Appellate defense counsel next argue that the trial judge erred in not suppressing the evidence obtained as the result of their client's consenting to a search of a storage locker he had rented. At trial, it developed that, after the appellant was arrested by civilian authorities, he was questioned by agents of the Office of Special Investigations (OSI), who gave him the proper codal warnings and told him of his right to counsel. At this time the appellant requested a lawyer and the interview was terminated. Later that day, he was returned to the OSI office and was asked to consent to a search of a rented storage space. The appellant indicated he wanted to call his attorney first. For the next 20 to 30 minutes, he attempted to phone his lawyer but was unable to get in touch with him. He told the OSI agent "well, I can't get a hold of him, so I'll sign [the consent form] and tell my attorney later that I did."

The appellant contends *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) and *United States v. McOmber,* 1 M.J. 380 (C.M.A.1976) require that after he has requested counsel any further interrogation of him must be in the presence of his counsel. Thus, his signing of the consent to search form without his counsel present was involuntary.

We disagree. The *McOmber* rule comes into play only if there is an interrogation. Factually, the case at bar is akin to *United States v. Thompson,* 12 M.J. 993 (A.F.C.M. R.1982), where we held that an accused's consent to a search was not a "statement" on his part within Article 31 of the Code and hence did not amount to an "interrogation." *See also United States v. Rushing,* 17 U.S.C.M.A. 298, 38 C.M.R. 96 (1967).

In *Edwards v. Arizona, supra,* the United States Supreme Court held that once an accused invokes his right to counsel, he may not be subjected to further interrogation until counsel is made available unless he initiates the further communication. He may waive his Fifth Amendment right if he does so knowingly and intelligently. Under the facts presented in *Edwards v. Arizona,* the Court concluded that such a waiver did not take place.

But this is different from the situation where an accused waives his Fourth Amendment privilege against unreasonable searches and seizures. In this situation the standard to be applied is the lesser one announced in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), which requires only that an accused give a consent which is voluntary under the

* The Pima County Attorney—both Tucson and Davis-Monthan Air Force Base are located in Pima County—acknowledged that the military had a primary interest in this case. His office indicated the State would waive jurisdiction since both the appellant and the victims were military personnel.

totality of all the surrounding circumstances. This is also the military rule. *United States v. Stoecker*, 17 M.J. 158 (C.M.A. 1984). A fair reading of *Edwards v. Arizona* suggests that it is permissible for law enforcement officials to continue to seek a waiver of an accused's Fourth Amendment rights after he has invoked his right to counsel. *United States v. Clymore*, 515 F.Supp. 1361 (E.D.N.Y.1981).

The facts before us make it clear that the appellant knowingly and voluntarily consented to a search of his storage locker. The issue before us involves a Fourth Amendment, rather than a Fifth Amendment, right. The motion to suppress was properly denied.

### III

■ Appellant defense counsel concede that when their client entered the first sergeant's office on 2 December 1983, he had the intent to commit a crime, but assert, nevertheless, that as a member of the squadron, he had the right to enter the building and the locked office. Accordingly, they argue the evidence is insufficient to support a conviction for housebreaking (Specification of Charge II).

In the offense of housebreaking, the element of "unlawfully enter" means an unauthorized entry without the consent of any person authorized to consent to the entry and without other lawful authority. See Department of the Army Pamphlet 27–9 (May 1982), Military Judge's Benchbook, paragraph 3–112b. In *United States v. Doskocil*, 2 C.M.R. 802, 803 (A.F.B.R.1952), we made the following observation regarding this element of the offense. There we said:

> The use of the word "unlawfully" clarified and made specific the legal theory maintained by the weight of authority that the entry contemplated as an element of the crime of housebreaking was an unlawful one. Thus, where a stranger enters a store open to the public, such entry being during regular store business hours, and steals merchandise therein, he has not committed the crime

of housebreaking for the reason that his entry was not unlawful. Should he enter the store without invitation or right during a time other than when the store is open to the public, he would be a trespasser and his entry would be unlawful. This unlawful entry coupled with an intent to commit a criminal offense in the store, would constitute the crime of housebreaking.

It is apparent the appellant entered a locked office without permission from anyone at a time when no business was being conducted. He was a trespasser and his entry was unlawful. We find ample evidence to support his conviction for housebreaking. Article 66(c), U.C.M.J., 10 U.S.C.A.

### IV

The remaining assigned errors are resolved adversely to the appellant. R.C.M. 601(e)(2); *United States v. Gibson*, 3 U.S.C.M.A. 746, 14 C.M.R. 164 (1954); *United States v. Alvarez*, 5 M.J. 762 (A.C.M.R. 1978); *see United States v. Jobes*, 20 M.J. 506 (A.F.C.M.R.1985). The findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge, and MURDOCK, Judge, concur.