**UNITED STATES**

v.

**Major Andrew H. BENEDICT,
250–54–5514 FR, United States
Air Force.**

**ACM 24444.**

U.S. Air Force Court of Military Review.

14 Aug. 1985.

Appellate Counsel for the Accused: George Martin Kripner and Vaughan E. Taylor, Jacksonville, N.C.; Colonel Leo L. Sergi and Lieutenant Colonel Michael D. Wims.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Lieutenant Colonel Donal F. Hartman, Jr.

Before HODGSON, FORAY and MURDOCK, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

The crucial issues in this case concern the exercise of court-martial jurisdiction over the appellant for alleged off-base indecent acts with a ten year old girl, and whether he was mentally responsible for those acts during their commission. Finding no impediment to trial either as to jurisdiction or the appellant's mental state, we affirm.

### I

The offenses took place at the appellant's house in the Hartford Square subdivision which is approximately a quarter mile from Homestead Air Force Base. A significant portion of the population in the housing development consists of military members assigned to Homestead. The victim, BLN, lives with her parents, both active duty noncommissioned officers, three houses away from the appellant. He and the child's parents are acquainted both professionally and socially, and the girl was allowed to visit the appellant at his home. Both parents testified that the situation greatly lessened the respect they had for the appellant as an officer and as a result of the offenses they required time off from work to obtain counseling for their daughter.

Although the offenses were initially reported through military channels, the matter was turned over to the Dade County Police Department for investigation. When that was completed the Dade County State Attorney's Office was informed. Sexual assaults which occur in civilian communities are cognizable under state law and are routinely prosecuted by the civilian authorities. Here, however, both base and civilian authorities concluded it would be in the best interests of the child and the community if the military took jurisdiction.

The appellant argues that the court-martial that tried him lacked jurisdiction because the offenses were not "service-con-

nected." *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). He invites our attention to a series of decisions by both the Court of Military Appeals and the Courts of Military Review finding no "service-connection" over misconduct similar to his. *United States v. Borys*, 18 U.S.C.M.A. 547, 40 C.M.R. 259 (1969) (no jurisdiction over off-post rape of civilian victims having no connection with the military); *United States v. Shockley*, 18 U.S.C. M.A. 610, 40 C.M.R. 322 (1969) (off-base sodomy of step-son lacked service-connection); *United States v. Henderson*, 18 U.S. C.M.A. 601, 40 C.M.R. 313 (1969) (carnal knowledge of a serviceman's daughter off-base not service connected); *United States v. McGonigal*, 19 U.S.C.M.A. 94, 41 C.M.R. 94 (1969) (no jurisdiction over off-base indecent liberties and sodomy with a dependent daughter of another serviceman). The Army Court of Military Review has followed the *Shockley-Henderson* line of cases and set aside convictions for indecent acts where the offenses took place off-base and off-duty. *United States v. Kesler*, 41 C.M.R. 530 (A.C.M.R.1969); *United States v. Christle*, 41 C.M.R. 474 (A.C.M.R.1969).

■ The cases the appellant offers to support a want of jurisdiction were all decided shortly after the *O'Callahan* decision, some 16 years ago. In the more recent past the Court of Military Appeals and the Courts of Military Review have dramatically redefined the scope and parameter of military jurisdiction. *Murray v. Haldeman*, 16 M.J. 74 (C.M.A.1983); *United States v. Lockwood*, 15 M.J. 1 (C.M.A. 1983); *United States v. Trottier*, 9 N.J. 337 (C.M.A.1980); *United States v. Shorte*, 18 M.J. 518 (A.F.C.M.R.1984), *pet. granted* 19 M.J. 120 (C.M.A.1984); *United States v. Roa*, 20 M.J. 867 (A.F.C.M.R.1985). In *Lockwood, supra* the Court of Military Appeals made it clear that a need exists to reexamine the service-connection criteria periodically in order to weigh the impact of off-base crimes on the Armed Forces' ability to accomplish their missions. In that

decision the Court stated that "the conduct of service members which takes place outside a military enclave is service-connected if it has a significant effect within that enclave." It follows then that court-martial jurisdiction does not end at the main gate, but may extend beyond.[1] Also to be considered is whether the military has a distinct and greater interest in the prosecution of this case than does the civilian community. Maintaining discipline within the Armed Forces is a unique military function. Officers, in particular, hold a position of special trust and responsibility. *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Orloff v. Willoughly*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); *United States v. Means*, 10 M.J. 162 (C.M.A.1981). While the State of Florida has the general duty of insuring that its laws are obeyed, the specific task of upholding military discipline is a Constitutional mandate given to the Armed Forces. U.S. Const. Art I, section 8, Cl. 14. The commission of a series of indecent acts by a servicemember on the child of another servicemember, regardless of where it takes place, has a direct, clear and measurable impact on the morale, reputation and integrity of the installation. This is especially so where the offenses occurred in close proximity to the installation, and where the offender, while not in the parents' direct chain of command, by virtue of his rank occupies a position of authority over them. In *Lockwood, supra*, Chief Judge Everett pointedly observed that maintaining the "reputation" and "morale" of the Armed Services is essential and cannot be ignored in determining the service-connection of off-post offenses. The reputation and morale of the installation was clearly affected by the appellant's misconduct. The totality of the circumstances surrounding these offenses created the required "service-connection" so as to give the military jurisdiction to resolve the question of guilt or innocence. *United States v. Roa, supra.*

1. In *O'Callahan v. Parker, supra*, Justice Douglas suggested that an offense against a civilian "at or near a military camp or post" is a distinctively military crime, 395 U.S. 358 (1969), n. 19.

## II

■ In *United States v. Frederick,* 3 M.J. 230 (C.M.A.1977), the Court of Military Appeals abandoned the combination of the *M'Naghten*-irresistible impulse tests [2] as the standard of mental responsibility to be applied when determining an accused's accountability for his or her actions. They adopted in its place the definition of insanity recommended by the American Law Institute (ALI). That test provides:

(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law.

(2) As used in this Article, the terms "mental disease or defect" do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

Prior to the adoption of the ALI standard, legal insanity did not include personality disorders even when present in an abnormal degree. M.C.M.1969 (Rev), para. 120; *United States v. Goodman,* 7 C.M.R. 660 (A.F.B.R.1952). The presence of non-psychotic mental disorders under the current standard as being sufficient to raise an insanity defense is open to scholarly discussion. *See generally United States v. Krauss,* 20 M.J. 741 (N.M.C.M.R.1985); *see also United States v. Haywood,* 18 M.J. 562 (A.C.M.R.1984). The term "mental disease or defect" includes any abnormal condition of the mind, regardless of its medical label, that substantially affects mental or emotional processes and substantially impairs behavior controls. Air Force Regulation 160–42 (25 September 1981); Psychiatry in Military Law, para. 2–1a.

The appellant contends that his offenses were the result of a mental condition diagnosed as pedophilia, which is the act or fantasy of engaging in sexual activity with prepubescent children as a repeatedly preferred or exclusive method of achieving sexual excitement. Medically, it is listed by the mental health community as one of a series of disorders described as neurotic disorders, personality disorders, and other nonpsychotic mental disorders. *See American Psychiatric Institute, Diagnostic and Statistical Manual for Mental Disorders* (DSM), 3d Ed.1980, pages 450–451.

To support the existence of a mental condition showing a lack of substantial capacity to conform his conduct to the requirements of law, the appellant offered the testimony of Doctor David M. Feazell and Doctor William R. Samek, two well-qualified psychologists. Both individuals were of the opinion that the appellant suffered from pedophilia and as a result of his condition lacked the substantial capacity to conform his conduct to the requirements of law. Both also agreed that pedophilia is not a psychotic disorder and the appellant displayed no evidence of a psychosis. Doctor Feazell stated that although the appellant knew it was wrong "to have sexual action with a child," he could not appreciate the criminality of what he was doing. Doctor Samek is a clinical psychologist specializing in the treatment of mentally disordered sex offenders. Using approximately two hours a week group therapy, he is treating the appellant in an out-patient status. In his opinion the appellant knew right from wrong at the time of the commission of the offenses, but was unable to integrate that concept into an emotional understanding of the situation. He agreed that the appellant would not do the acts he is accused of if an adult were present. During the cross-examination of Doctor Samek, he was asked by the prosecution if he was aware of an American Journal of Psychiatry article suggesting that mental disorders potentially leading to exculpation must be serious—that is, a condition that psychiatrists usually diagnose as a psychosis. Doctor Samek was not familiar with the article, but agreed with it.

Captain (Dr) Peggy M. Huddleston is a staff psychiatrist assigned to the Eglin Air

**2.** McNaghten's Case, 10 Cl & F 200, 8 Eng.Rep. 718 (H.L.1843).

Force Base Regional Hospital. The appellant was her patient and she was a member of the Sanity Board that evaluated him in October, 1983. It was her opinion and the opinion of the Sanity Board that the appellant "possibly suffered from a mental disease/defect known as pedophilia." He had, nevertheless, the substantial capacity to appreciate the criminality of his conduct and to conform that conduct to the requirements of law. He had no psychiatric condition that would warrant separation through military medical channels. It was Doctor Huddleston's opinion that pedophilia is a non-psychotic mental disorder that does not grossly and demonstrably impair a person's perception or understanding of reality. She is familiar with the American Journal of Psychiatry article on this general subject and considers it an attempt to bridge the communication gap between the medical and legal communities.

Regarding Doctor Huddleston's testimony, appellate defense counsel argue the trial judge erred by allowing her to state that pedophilia did not meet the definition of "mental disease or defect" as contemplated in military law. In their view this was tantamount to the prosecution tendering her as an expert on the "legal definition of mental disease or defect" and thus she rendered an ultimate legal conclusion under the guise of medical diagnosis.

■ Taken without change from Federal Rules of Evidence 704, Mil.R.Evid. 704 states that testimony in the form of an opinion or inference is not objectionable on the ground that it embraces an ultimate issue to be decided by the trier of fact. Doctor Huddleston's testimony, when considered in its entirety, did not express an opinion that the appellant was legally sane, but rather her view on whether his condition amounted to "mental disease or defect." Her testimony did not express an opinion as to his guilt or innocence anymore than a fingerprint expert does when he states that the prints on the knife found in the victim's back matched the accused's. Her opinion involved the appellant's mental condition and the triers of fact would then

decide if that condition was sufficiently exculpatory to warrant a not guilty finding. This area of the law involves a large element of judicial discretion which we find the trial judge properly exercised. *United States v. McCoy*, 539 F.2d 1050 (5th Cir. 1976). The testimony was properly admitted.

■ The appellant also contends the trial judge erred by permitting Doctor Huddleston to refer to the article in the American Journal of Psychiatry to support her opinion that pedophilia did not amount to a "mental disease of defect," and allowing the accused's expert to be cross-examined on the material contained in it. Mil.R.Evid. 703, which is identical to the corresponding federal rule, permits consideration of information that is reasonably relied upon by other experts in arriving at sound opinions on the subject. Doctor Samek, while not familiar with the article, agreed with its premise that mental disorders potentially leading to exculpation should be "serious", i.e., a psychosis. We consider the American Journal of Psychiatry to be in that category of learned periodicals to be called to the attention of an expert witness during cross-examination and relied upon by an expert witness during direct examination. *See* Mil.R.Evid. 803(18). We find no error.

■ Air Force Regulation 160–42 deals with psychiatry in military law and requires that a written report be made whenever a psychiatric examination is conducted. *See* Air Force Regulation 160–42, *supra*, para. 4–2. As stated earlier, this examination was accomplished in October 1983, and the written report was admitted in evidence over defense objection. The appellant now urges this report was hearsay and denied him the right of confrontation of the two Sanity Board members who did not testify. This assigned error will not delay us long as we view the challenged document as a record of a regularly conducted business activity. Such reports may contain opinions and diagnosis and are admissible as an exception to the hearsay rule. See Mil.R.Evid. 803(6); *accord Unit-*

944

*ed States v. Dyer*, 752 F.2d 591 (11th Cir. 1985).

■ Finally, appellate defense counsel argue that the government failed to prove beyond a reasonable doubt that the appellant was sane when he committed the alleged offenses. It is, of course, well settled that the burden of proving the sanity of a particular accused beyond a reasonable doubt is upon the prosecution. *United States v. Parker*, 15 M.J. 146 (C.M.A. 1983). This is a factual determination to be decided by the members under proper instructions. With an insanity issue the testimony of expert witnesses is most important. Here, both the government and defense witnesses tended to agree that the appellant had a mental condition described as pedophilia, which is a non-psychotic disorder. All agreed that he exhibited no evidence of a psychosis. Their disagreement was whether this condition resulted in a lack of substantial capacity to conform his conduct to the requirements of law. The defense witnesses maintained he lacked this capacity and government witness testified he possessed it. The fact that expert testimony seems to agree on a diagnosis of a mental condition, but disagrees on the appellant's capacity to conform his conduct to the requirements of law, does not preclude a finding by the members that he was mentally responsible beyond a reasonable doubt. *United States v. Collins*, 690 F.2d 431 (5th Cir.1982); *United States v. McInnis*, 507 F.Supp. 536 (S.D.Tex.1981). The alleged defect should be examined in light of the circumstances and medical diagnosis in order to determine whether the appellant's mind was so impaired as to interfere with his ability to rationally control his actions or to grasp the relevance of the law. *See United States v. Williams*, 483 F.Supp. 453 (E.D. N.Y.1980). The testimony of the expert witnesses was given to the court members under proper instructions. *United States v. Cortes-Crespo*, 9 M.J. 717 (A.C.M.R. 1980); *aff'd*, 13 M.J. 420 (C.M.A.1982). We, like they, are convinced beyond a reasonable doubt that the appellant was mentally responsible at the time of the commis-

sion of the offenses. Article 66(c), U.C. M.J., 10 U.S.C. § 866(c).

### III

■ Appellate defense counsel maintain the trial judge erred by refusing to admit evidence of their client's good military character that included his awards, decorations and Officer Effectiveness Reports. We agree. In a series of decisions beginning with *United States v. Weeks*, 20 M.J. 22 (C.M.A.1985), the Court of Military Appeals held that evidence of good military character is admissible as substantive evidence to prove that an accused did not commit the charged acts. *See United States v. Belz*, 20 M.J. 33 (C.M.A.1985). However, not every error in excluding character evidence requires a rehearing, *United States v. Traveler*, 20 M.J. 35 (C.M. A.1985); *United States v. Vandelinder*, 20 M.J. 41 (C.M.A.1985). Such a drastic remedy is required only on a showing of prejudice. Here, the defense conceded the appellant's misconduct with BLN, but defended on the basis he had a mental condition which resulted in a substantial lack of capacity to conform his conduct to the requirements of the law. Evidence of his good military character would have had no impact on a diagnosis of pedophilia. The exclusion of his good military character was harmless error beyond a reasonable doubt. *United States v. Traveler, supra*.

### IV

■ The remaining assigned errors are resolved against the appellant. The offenses of which he has been convicted are serious and are not typical of his past service. To the contrary, his record is a superior one and he has served with gallantry in air operations in Southeast Asia. An outstanding combat record has traditionally been a mitigating factor in adjudging a sentence and in reviewing its appropriateness. *United States v. Fleener*, 43 C.M.R. 975 (A.F.C.M.R.1971). Accordingly, we find appropriate only so much of the sentence as provides for a dismissal, confine-

ment at hard labor for 18 months and forfeiture of all pay and allowances. The findings of guilty and the sentence, as modified, are

AFFIRMED.

FORAY, Senior Judge and MURDOCK, Judge, concur.