## UNITED STATES

### v.

**Sergeant Donald A. BLAKE, FR 283–60–2761, United States Air Force.**

### ACM S26622.

U.S. Air Force Court of Military Review.

Sentence Adjudged 28 Sept. 1984.

Decided 5 April 1985.

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Captain Timothy J. Malloy.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Colonel Andrew J. Adams, Jr.

Before HODGSON, FORAY and MURDOCK, Appellate Military Judges.

## DECISION

MURDOCK, Judge:

The appellant was charged with stealing $90 from an Explorer post sponsored by his squadron and $30 from the security police animal impoundment fund. He was found guilty of both offenses, and no errors are alleged concerning the theft from the impoundment fund. The appellant has contested the jurisdiction to try the theft of Explorer post funds by court-martial both at trial and on appeal. We agree with the trial judge that there was jurisdiction.

The appellant, a security police desk sergeant, was an associate advisor to a law enforcement Explorer post sponsored by his squadron. One of the post's activities was to raise funds by selling first aid kits in the base housing area. The senior post advisor, also a security policeman, told the Explorers to give the money they raised to the appellant at security police headquarters. The first $69 was delivered to the appellant at police headquarters by three members of the post. He was on duty as desk sergeant at the time of the delivery. He received another $21 from the mother of one of the Explorers at her off-base residence. This woman worked at the base and had sold several kits to fellow workers on base. Later, the senior post advisor asked the appellant whether any money had been turned in. The appellant said some had, and that it was at his off-base trailer. Still later, the appellant told the senior advisor and a security police investigator that his trailer had been burglarized and the money had been stolen.

He told them he had reported the theft to the local police. Both questioners believed the story and let the matter drop. Several weeks later, the appellant was implicated in a theft from the security police headquarters building. During the course of the investigation into that theft, the investigator asked the senior post advisor to determine whether the appellant had actually reported the theft from his trailer to the civilian police. He had not.[1]

Jurisdiction to try off-base offenses has concerned military courts for years. *O'Callahan v. Parker*[2] and *Relford v. Commandant*[3] both indicate that military jurisdiction can be exercised when the military has an interest in the case which is distinct from and greater than the civilian jurisdiction.

*United States v. Lockwood,* 15 M.J. 1 (C.M.A.1983) involves issues similar to the present case. In *Lockwood,* the Court of Military Appeals found jurisdiction to try an airman who stole his roommate's wallet on base, and then used the identity documents he found in the wallet to obtain a loan from an off-base loan agency. The Court stated, in part, that where a case involves connected on and off-base offenses, there may be advantages to both parties to having the accused face only one trial. They also stated that the military had an essential and obvious interest, related to the security of persons and property on the military enclave, in pursuing a crime which is initiated on base even if the offense is consummated off base.

Noting that *Relford* recognized geographical relationships, they stated:

An offense committed by a servicemember near a military installation tends to injure relationships between the military community and the civilian community and thereby makes it more difficult for servicemembers to receive needed local support. In a sense, Lockwood's actions tended to injure the base population at Sheppard Air Force Base.

They again referred to *Relford* when they stated that the mention in that case of the adverse effect of an on-base crime on the "morale, discipline, reputation, and integrity of the base itself," implies a recognition by the Supreme Court that a military organization has an interest in maintaining a good reputation. The Court expanded on this emphasis on reputation and morale by saying in *Lockwood:*

Indeed, it should be apparent that, for a nation which now relies on an All-Volunteer Force obtained by recruitment and which needs to retain in uniform "career soldiers" skilled in the technology of modern warfare, maintaining the "reputation" and "morale" of the Armed Services is essential. This circumstance cannot be ignored in determining the service connection of off-post offenses.

They end their analysis by stating:

since the two off-base crimes committed by appellant were part of a course of conduct which began on base at Sheppard Air Force Base and in light of the impact of those offenses upon persons assigned at Sheppard Air Force Base and the morale, reputation, and integrity of the base itself, we conclude that the court-martial could properly try all the offenses that were referred to it.

There are special considerations in this case which make the exercise of court-martial jurisdiction compelling, particularly in light of the emphasis on reputation, integrity, and morale found in *Lockwood.*

The Air Force recognizes the value of cooperation with national scouting organizations and has issued special policy guidance on the subject:

Taking part in scouting and other youth related programs is an ideal method for enhancing Air Force community relations programs, instilling interest in aerospace education, and providing excellent opportunities to contribute to the well-being of

---

1. The appellant admitted during the inquiry into a stipulation of fact that he had sent the money to his bank to redeem, partially, an overdrawn check he had issued.

2. 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

3. 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

the nation. It is in the public interest that these organizations be given support to the extent authorized by law and consistent with the capability of the Air Force. Air Force cooperation with national scouting organizations will not be treated as a source of personnel procurement. The Air Force receives long range benefits from taking part in these programs because scouts will develop an interest in and familiarity with aerospace activities in general, with the Air Force in particular. The diverse scouting programs of the three senior groups—ages 14 through 20, the Explorers of the BSA, senior scouts of the GSUSA, and horizon members of CF, Inc.—often provide experiences designed to assist members in making career decisions. The Air Force can provide experiences related to careers in aviation, law enforcement, medicine, communications, etc.[4]

An extensive list of permitted assistance for scouting programs, including expanded cooperation with senior scout organizations such as Explorers, appears later in the same regulation.[5]

Apparently in furtherance of this Air Force policy of cooperation with scouting organizations, the 305th Security Police Squadron, of which appellant was a member, sponsored a Law Explorer post. At the time of trial, all the advisors for this post were members of the squadron and testimony indicated that post advisors have always been squadron members. The squadron's procedure of notifying their major air command, Strategic Air Command, of the names of proposed post advisors prior to their appointment is a further indication of the close relationship the squadron had with this post.

This close relationship was mentioned by the squadron commander when he testified that the appellant's theft of funds from the post had had a "tremendous impact on the kids and on the unit." He stated:

Any time the integrity or the credibility of one of our guys is questioned, con-

cerning criminal wrongdoing, it has a direct impact on the ability of our guys to do the job that we're entrusted to do for the base population. It has a very damaging impact as far as the public trust that we have. To be able to protect the resources and property on base and then to have a thief among us, it destroys our credibility. The base population doesn't want to work with us at that point. We have a tendency to lose that credibility.

When the police squadron commander was asked whether the positive reaction the base community had to the Explorer program was based on their sponsorship and training or merely reflected the quality of the individual children, he replied, "I would like to hope it was because we're providing them the right kind of example, ..."

These offenses involve misconduct in a public affairs community relations activity. Such activities are designed to increase Air Force involvement in the community and increase community awareness of Air Force activities. Because these activities are so visible to the public, misconduct in them quickly harms the reputation of the military organization involved. Considering all the factors involved in this case, including the desirability of a single trial when there are both on and off-base offenses, it is apparent that the military has an interest in prosecuting this case which is distinct from and greater than that of the civilian community. The military judge properly found that the court-martial had jurisdiction over this offense. The findings of guilty and the sentence are

AFFIRMED.

HODGSON, Chief Judge, and FORAY, Senior Judge, concur.

---

4. Air Force Regulation 190–1, Public Affairs Policies and Procedures, 16 Feb 1982, Section J.

5. Air Force Regulation 190–1, Public Affairs Policies and Procedures, 16 Feb 1982, paragraph 4–54.