UNITED STATES

v.

**Airman First Class Steven C. GOINS, FR 427–35–8721, United States Air Force.**

**ACM 24685.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 12 Oct. 1984.

Decided 17 May 1985.

---

Appellate Counsel for the Accused: Colonel Leo L. Sergi, Major William H. Lamb, and Captain Ronald W. Schmidt, USAFR.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert, Colonel Andrew J. Adams, Jr., and Lieutenant Colonel Robert L. McHaney, Jr., USAFR.

Before FORAY, SNYDER and O'HAIR, Appellate Military Judges.

## DECISION

SNYDER, Judge:

Appellant stands convicted of conspiracy to commit aggravated assault with intent to inflict grievous bodily harm, intentionally inflicting grievous bodily harm, and assault and battery. Appellate defense counsel submit three assignments of error for our consideration. We hold that, the court-martial had subject matter jurisdiction over all of the charged offenses; and, the appellant not having testified in his behalf, the trial judge's ruling that a prior conviction *would* be admissible for impeachment purposes was not preserved for appellate review, and affirm.

A review of the salient facts reflects the following. On or about April 1984, Airman Mueller mildly vandalized the victim's barracks room as a prank. The victim reported the prank to the unit first sergeant. Although no disciplinary action was taken against Mueller, he was incensed over the victim's "snitching."

On 16 July 1984, while patronizing a base tavern and the bowling alley, the victim had consumed beer to the point of mild intoxication. During the evening hours, the victim saw Wood, Mueller, Glasgow, and appellant in the base bowling alley and asked for a ride.[1] Unbeknownst to the victim, Wood, *et al*, had seen him in the tavern earlier in the evening, and Mueller expressed consternation over the victim having reported him to the first sergeant. After entering Wood's vehicle, the victim passed out and Wood departed the base to obtain gas. While Wood was obtaining gas, the victim became ill and left the car to vomit. After departing the gas station, victim again passed out. The victim was awakened by being forcibly pulled from the vehicle by Glasgow.

Upon being removed from Wood's vehicle, the victim realized he was at an area

---

1. Although he requested a ride, the victim testified that he did not express a specific destination, but was content to go wherever "they" were going.

of the base called Moon Lake. He was then assaulted in turn by all four. Additionally, appellant threw victim into a mud puddle, removed the victim's boots and belt buckle, and threw them into the lake. The original suggestion had been to place the victim in a boat and cast it adrift. However, Glasgow's awakening of the victim rendered that idea impractical. It was then suggested that the victim simply be left at the lake to return to the barracks barefooted any way he could. The victim pleaded that they not leave him and even suggested that he be blindfolded to allay Mueller's concerns that he would recognize Glasgow. Mueller warned victim that he had to be taught a lesson and not to report the incident, and then blindfolded him. The victim was placed in the rear seat of the vehicle between Glasgow and appellant.

Appellant suggested returning to the main part of the base and leaving the victim at the credit union. At this point, however, Mueller was becoming concerned over the victim again reporting him, but for a more serious offense. Mueller stated they might have to kill the victim to keep him quiet. Wood testified that, to that time, he considered the killing remark all part of the prank, and expressed agreement for that reason. Upon arriving at the credit union, Mueller was concerned about the presence of nearby security policemen and advised they could not leave the victim. They departed the area and Wood later stopped the car to relieve himself. While doing so, appellant, Mueller, and Glasgow left the car and conferred out of Wood's hearing. After reentering the car, they proceeded to Interstate highway 220.

While proceeding on I–220, the victim was still in the rear seat between appellant and Glasgow, and Mueller was in the front passenger seat. Mueller had the victim

passed "up to him." He told the victim that he was going to lean him out the window, but he would keep hold of him. The victim still attempted to hold onto the seat headrest. Upon seeing Mueller readjust his position to make room for victim, Wood started to slow down because he thought victim would be left at that point. Mueller told him to keep driving. When the victim leaned out the window he felt himself being pushed from behind and felt two hands on each of his legs. He begged, "no, don't do it," but was thrown from the moving vehicle.

Wood testified that he was going approximately 50 miles per hour when he heard the victim say "don't do it." When he looked towards the window he saw appellant kicking in the direction of the victim. Mueller stated "I think he's dead," and appellant mentioned the difficulty they had in getting the victim out the window. Glasgow said if the victim was still alive, they would have to finish him off. The victim suffered a broken clavicle and multiple lacerations and scrapes, including a scalp wound.

I

■ The initial assignment of error is that the court-martial lacked subject matter jurisdiction over the conspiracy to commit aggravated assault and the aggravated assault.[2] Appellate defense counsel have submitted an extensive brief arguing that, since the affected offenses occurred off the installation, they are not service-connected. *See Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). Their main premise is that the only matter supporting jurisdiction is the victim's military status, which, they argue, is clearly an insufficient basis.

**2.** Appellant was charged under the third clause of Article 134, 10 U.S.C. § 934 with violating the federal kidnapping statute, 18 U.S.C. 1201, conspiracy to violate that same statute, conspiracy to commit murder, assault with intent to commit murder, and battery, all alleged to have occurred in an area of Barksdale Air Force Base, Louisiana, which is exclusive federal jurisdiction. The members convicted appellant of

the battery, acquitted of the offenses involving 18 U.S.C. 1201, but, by exceptions and substitutions, convicted appellant of conspiracy to commit aggravated assault and aggravated assault, both occurring at or near Bossier City, Louisiana. The members apparently concluded that the agreement to throw the victim from the car was reached after leaving the credit union rather than at Moon Lake.

We hold that the offenses are clearly service-connected and the court below properly exercised jurisdiction. *United States v. Lockwood,* 15 M.J. 1 (C.M.A.1983). Although no offense was committed by virtue of the victim accepting a ride from his assailants, the sequence of events commenced on the installation. Further, the victim suffered his initial assault on the installation. Indeed, it was stipulated as fact that Moon Lake is located on Barksdale AFB, Louisiana. Thus, there was an unbroken chain of events beginning with an assault and battery *on* the installation and continuing to its culmination *near* the installation. This fact is not vitiated by the agreement being formed after departing the installation, for it was an inherent part of the overall scenario. *See United States v. Lockwood, supra; United States v. Shorte,* 18 M.J. 518 (A.F.C.M.R.), *pet. granted,* 19 M.J. 120 (C.M.A.1984).

In addition to the factors above, there is a far more compelling and overriding factor in the instant case which clearly renders the affected offenses service-connected. The sole reason the victim was viciously assaulted was because he reported the commission of an offense, albeit a minor one, to the first sergeant. Protecting the safety of members who report offenses to appropriate officials bears directly on the security of the installation and the maintenance of discipline.[3] This fact alone gives the military a distinct and overriding interest in exercising jurisdiction. *United States v. Lockwood, supra; see United States v. Blake,* 20 M.J. 614 (A.F.C.M.R. 1985).

## II

Appellant next complains that the military judge abused his discretion in denying appellant's motion *in limine* on the use of a prior conviction for impeachment purposes. We hold that the issue was not preserved for appellate review and, therefore, was waived.

Prior to assembling the members, trial defense counsel made a motion *in limine* to exclude evidence of a prior conviction *should* appellant testify in his own behalf on the merits. The prior conviction was by special court-martial for willfully damaging private personal property, the amount of damage being in excess of $100.00, in violation of Article 109, 10 U.S.C. § 909. Trial defense counsel properly conceded that the conviction met the first prong of Mil.R. Evid. 609(a)(1), but argued it should be excluded under the second prong of the rule as unduly prejudicial.[4] Trial defense counsel did not specifically state that appellant would, in fact, testify if the motion was granted and he did not provide a specific proffer of appellant's potential testimony.

Appellate defense counsel aver that the trial judge applied an incorrect standard in exercising his discretion and ruling the conviction admissible. Appellate government counsel argue that the conviction was ruled *potentially* admissible depending upon the development of the actual facts. In effect, appellate government counsel argue that the trial judge deferred his ruling, whereas appellate defense counsel assert the conviction was actually ruled admissible.

A review of the record reflects some support for both positions, although more so for the position that the trial judge deferred his ruling. However, this issue need not detain us, for appellant did not testify.

The most recent decision of the Court of Military Appeals which discusses Rule 609(a)(1) is *United States v. Cofield,* 11

---

**3.** It also serves to prevent efforts at self-help which often result in breaches of the peace.

**4.** Rule 609(a)(1) reads as follows:
 *General rule.* For the purposes of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examina-

tion but only if the crime (1) was punishable by death, dishonorable discharge, or imprisonment in excess of one year under the law under which the witness was convicted, and the military judge determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused. . . .

M.J. 422 (C.M.A.1981), which held that the issue was reviewable on appeal even though the appellant did not testify at trial. *Cofield* involved the admissibility of a prior conviction by summary court-martial at which the accused was not provided counsel. The case was tried prior to the Military Rules of Evidence, but the Court reached its decision in light of those rules and the Federal Rules of Evidence. Although *Cofield* involved a prior conviction by summary court-martial, its *dicta* clearly indicated that an accused would not have to testify in order to preserve appellate review of a ruling admitting any prior conviction. *See United States v. Cofield, supra.*

In reaching its decision in *Cofield, supra,* the Court relied entirely on decisions of those Circuit Courts of Appeals which held that a defendant need not testify to preserve the issue. *United States v. Cofield, supra,* 427–430. However, while resolving a split among the circuits, the United States Supreme Court recently overruled those cases and held a defendant must testify in order to preserve the issue for review. *Luce v. United States,* — U.S. —, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

Since the Court of Military Appeals has not had occasion to consider the issue since *Cofield,* we are convinced that *Luce v. United States, supra,* now represents the prevailing precedent on this issue except for prior convictions by summary courts-martial where the accused was not afforded counsel.[5] *See Luce v. United States, supra,* — U.S. —, —, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (Brennen, J., concurring).

On facts very similar to those of the instant case, the Court in *Luce* stated as follows:

A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context. This is particularly true under Rule 609(a)(1), which directs the court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. To perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify.

*Luce v. United States, supra,* — U.S. —, —, 105 S.Ct. 460, 463, 83 L.Ed.2d 443. We do not discern any factor which would preclude our applying *Luce* to the instant case. Rule 609 is taken entirely from the Federal Rules of Evidence. Analysis of the Military Rules of Evidence, Manual for Courts-Martial, 1969 (Rev.), p. A18–89; *see* Mil.R.Evid. 101(b). Likewise, there is no indication that the President intended that motions *in limine* be ruled on prior to the trial of the general issue rather than leaving it to the discretion of the trial judge. *See* R.C.M. 905(d), 906(b)(13).[6] Second, there is clear indication that the Military Rules of Evidence deleted the favorable treatment accorded the accused by the prior M.C.M. in the area of impeachment. *See* Mil.R.Evid. 608(b).[7]

■ We conclude that requiring an accused to testify in order to object to the admissibility of a prior conviction is the better rule, for it ensures that the factfinder will not be deprived of highly relevant evidence, and that an accused will not benefit where there was no intention to testify. Otherwise, in what position is the trial

---

5. The Army Court of Military Review has applied *United States v. Cofield,* 11 M.J. 422 (C.M.A.1981) to cases tried under the Military Rules of Evidence. *See United States v. Rogers,* 17 M.J. 990 (A.C.M.R.1984); *United States v. Wright,* 13 M.J. 824 (A.C.M.R.1982). However, both of these cases involved convictions by summary court-martial without counsel.

6. The Court in *Cofield, supra,* specifically recognized the discretion of the trial judge to defer

ruling until after the accused testifies. *United States v. Cofield, supra,* 430.

7. For example, Rule 608(b) allows an accused to be impeached with specific instances of misconduct just as any other witness. Prior to the Military Rules of Evidence, an accused could be impeached only by misconduct which resulted in a conviction unless he denied *ever* committing an offense of any kind. *See* M.C.M., 1969 (Rev.), para. 153*b*.

judge when a prior conviction is ruled inadmissible prior to an accused testifying and the accused's actual testimony renders the conviction admissible? If the trial judge reverses the earlier ruling, then the issue of a mistrial must be confronted. *See United States v. Cofield, supra,* 431 n. 14. The alternative of adhering to an erroneous ruling which excluded a prior conviction is equally unattractive, for it provides an accused with an unfair windfall.[8]

■ The sole purpose of a motion *in limine* is to avoid the prejudice which may result from bringing inadmissible matters to the attention of the court members. R.C.M. 906(b)(13). This purpose will be served fully by requiring trial counsel to offer a prior conviction in a 39a session *after* the accused's testimony on direct examination. It will also preclude a claim of trial by ambush.[9]

### III

We have considered the remaining assignment of error and found it to be without merit.

### IV

Accordingly, the findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge, and O'HAIR, Judge, concur.

**8.** That is why the Court in *Luce v. United States,* —— U.S. ——, —— n. 5, 105 S.Ct. 460, 463 n. 5, 83 L.Ed.2d 443, specifically rejected a proffer of testimony as an adequate basis to preserve the issue.

**9.** We do not view impatience by the court members as a realistic concern, for very few trials are conducted without the necessity of 39a ses-

sions to resolve objections during direct and cross-examination. That is why the members are informed in the trial judge's preliminary instructions to expect such sessions in the interest of providing the accused a fair trial. *See United States v. Bartlett,* 12 M.J. 880 (A.F.C.M.R. 1981) (Mahoney, J., concurring).