**UNITED STATES**

v.

**Master Sergeant Robert W. BOLSER,
FR 280–44–5061, United States
Air Force.**

**ACM 25031.**

U.S. Air Force Court of Military Review.

18 April 1986.

Appellate Counsel for the Accused: Colonel Leo L. Sergi, Lieutenant Colonel Michael D. Wims and Captain Karen McCoy. Captain Gary F. Herbst filed a brief in behalf of the accused.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert, Captain Marc Van Nuys and Captain Robert L. Marconi, USAFR.

Before SESSOMS, MURDOCK and CARPARELLI, Appellate Military Judges.

**DECISION**

SESSOMS, Senior Judge:

The accused was charged with adultery, taking indecent liberties with a female un-

der the age of 16 years, taking indecent liberties with a male under the age of 16 years, and sodomy with a male under the age of 16 years. He pled guilty to adultery, but not guilty to the other offenses. He was convicted in a general court-martial bench trial of adultery and taking indecent liberties with the female, his step-daughter. His sentence included a bad conduct discharge, confinement for a year and a day, and reduction to grade E–4.

Appellate defense counsel made three assignments of error in addition to the Article 38(c), 10 U.S.C. § 838(c) brief filed by trial defense counsel.[1] The only issue we will discuss is that of subject matter jurisdiction.

The adultery offense grew out of a relationship between the appellant and a 16 year old girl who worked for him in a private commercial venture in the city of Albuquerque, New Mexico. From July 1983 until January 1984 this girl lived with the appellant and his family in their quarters on Kirtland Air Force Base, and it was there that the adultery was committed. He was also convicted of having fondled the breast of his step-daughter, who was 15 years old at the time of the trial. The fondling was alleged to have occurred twice between June 1984 and October 1984; once in Albuquerque, and once in Lebanon, Ohio, a town some 30 miles from Wright-Patterson Air Force Base. The chief prosecution witness was able to provide the court with specifics as to the time and place of the incident which is alleged to have occurred in Ohio. However, her memory regarding the alleged New Mexico incident was quite sketchy, and she was able to tell the court only that it occurred in the city of Albuquerque.

The government offered an affidavit from the Lebanon, Ohio, Prosecuting Attorney and a letter from the District Attorney of Albuquerque, New Mexico, purporting to relinquish jurisdiction over any offenses committed in their respective jurisdictions.

Relying principally on *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23

L.Ed.2d 291 (1969) and *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), the appellant contends that the trial court was without jurisdiction to try him for the indecent liberties offense because the prosecution could not establish the necessary "service-connection." We agree.

In denying the defense motion to dismiss for lack of subject matter jurisdiction, the military judge made the following findings:

With reference to defense's motion to dismiss Specification 2 for lack of jurisdiction, after reviewing of the proferring and all case material provided by trial and defense counsels, I have come to a conclusion that there is not a single traditional source of jurisdiction which in and of itself standing alone could create jurisdiction for this court. But, notwithstanding that, I find that the military has a distinct interest in the prosecution of this case.

The offense occurred between an off duty military member of the United States Air Force and a dependent. It occurred near a military installation to which the accused had been stationed; that the offense would distinctly effect the morale, reputation, and integrity of the United States Air Force and the general reputation of the United States Air Force, the Department of Defense at Wright-Patterson Air Force Base in Ohio. The general reputation would be known to the entire general population. It would reflect detrimentally to our concept of a citizen soldier engaged in a morally mandated protection of democracy.

Further, I find the issue of pendant jurisdiction, that is the consolidation of matters into a singular case, to be a factor. Further, I find no civilian court is available for prosecution, whether leading to conviction or acquittal. Although I note that there are civilian courts present in the jurisdiction of Ohio and of New Mexico, I note that they relinquished their

---

1. Appellant's motion to file a letter from the trial defense counsel is granted.

jurisdiction and waived their jurisdiction in favor of a military court-martial. This again, standing alone, does not create jurisdiction. I must assume that both prosecutors for both civilian jurisdictions have thoroughly researched, weighed the law and all facts prior to making their decisions and there can be no showing that they have waived jurisdiction arbitrarily or with capriciousness.

Further, there exists a flouting of authority in that the accused is a senior noncommissioned officer of the United States Air Force. He is subject to Air Force standards twenty-four hours a day, subject to Air Force duties and all war related military duties on a twenty-four hour basis. It is the avowed intent of the United States Air Force to instill in its senior NCOs the highest standards of the Air Force subculture and of our society and for those members of the senior NCO ranks who act as the backbone of the United States Air Force to act as role models.

There was a flouting of the standard in that the standards required of all noncommissioned officers are also enforced through the use of nonjudicial punishment and judicial punishment under the Uniform Code of Military Justice in accordance with all applicable regulations. Therefore, I find that notwithstanding there is not a single jurisdictional basis which in and of itself would create jurisdiction, I find that in weighing all factors presented to me, including those I have just enounciated, there is a totality of factors which taken as a whole and not divisible into a single part in and of itself creates jurisdiction. Therefore, defense motion to dismiss Specification 2 of Charge I is denied.[2]

■ The Supreme Court's decision in *O'Callahan, supra,* and the Court of Military Appeals opinions which followed closely in its wake have, over the years, undergone considerable interpretation and application in military courts. *See United State v. Shockley,* 18 U.S.C.M.A. 610, 40 C.M.R. 313 (1969). In *O'Callahan* the court stated that although military criminal jurisdiction requires that the offender be in military status, the mere status of the offender does not complete the inquiry. *O'Callahan,* 395 U.S. at 267, 89 S.Ct. at 1688. The determination of military criminal jurisdiction also requires evaluation of whether the crime is service-connected. *O'Callahan,* 395 U.S. at 272, 89 S.Ct. at 1690. It is important to recognize that considerations such as what the crime tells us about the character and discipline of the offender, the desirability of retaining such a person in the armed forces, and the impact of the offender, himself, on the military community are ones that relate primarily to the status of the offender and to the question of *in personam* jurisdiction. In short, the question of *in personam* jurisdiction focuses on the *offender* and the offender's relationship to the authority seeking to exercise jurisdiction over him. *In personam* jurisdiction is not in question in this case. The question before us is whether the Air Force has jurisdiction over the *offense.* The determination of jurisdiction *in rem* must focus on the particular facts of the crime and the relationship of the crime to the military. The case law tells us we must determine whether the crime was "service-connected." *Relford, supra; O'Callahan, supra.*

■ In *Relford* the Supreme Court focused on twelve factors which shed light on the question of service-connection. Applying the *Relford* factors to the indecent liberties offenses in New Mexico and Ohio we find: the accused was properly absent from the base; the offenses occurred at places not under military control; both locations were within the United States; the offenses were committed in peacetime and

---

**2.** This is a verbatim quote from the record. It should be noted that the trial counsel is required to examine the record before authentication and cause those changes to be made which are necessary to report the proceedings accurately. R.C.M. 1103(i). Finally, it is the military judge who is required to authenticate, i.e., validate the accuracy of, the record. R.C.M. 1104(a)(2)(A).

were unrelated to authority stemming from the war power; the offenses did not relate to the appellant's military duties; the victim was a civilian who was not involved in the performance of any duties related to the armed forces, and no military member was victimized as a result of kinship to the victim; notwithstanding letters from civilian prosecutors in New Mexico and Ohio, civilian courts were present and available to prosecute the offenses; military authority was not flouted; the offenses did not threaten the military base; the offenses did not violate military property; and the offenses were of a kind traditionally prosecuted in civilian courts. These findings suggest that Charge I, Specification 2, alleging indecent liberties in both New Mexico and Ohio, were not service-connected. *Relford, supra, O'Callahan, supra, Shockley, supra.*

In *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), the Supreme Court again held that military courts have no power unless the offenses are service-connected. The court stated that the issue of service-connection

> turns in major part [1] on gauging the impact of an offense on military discipline and effectiveness, [2] on determining whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and [3] on whether the distinct military interest can be vindicated adequately in civilian courts. These are matters of judgment that often will turn on the precise set of facts in which the offense has occurred.

*Schlesinger v. Councilman,* 420 U.S. at 760, 95 S.Ct. at 1314, *citing Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), (we have added the numbering in the quoted text).

The latest decision from the Court of Military Appeals on the question of jurisdiction over off-base child molestation offenses is *United States v. Solorio,* 21 M.J. 251 (C.M.A.1986). Solorio was a member of the Coast Guard who was charged with numerous sex offenses involving minor fe-

male dependents of other Coast Guard members. The offenses allegedly occurred off-base in Alaska and later on a Coast Guard installation at Governor's Island, New York. The trial judge, sitting at Governor's Island, dismissed the Alaska offenses for lack of jurisdiction. The prosecution filed an appeal under Article 62, U.C.M.J., 10 U.S.C. § 862. The Coast Guard Court of Military Review reversed. In affirming the holding of the lower appellate court, the Court of Military Appeals had this to say:

> Obviously, not every off-base offense against a servicemember's dependent is service-connected. For example, an off-post larceny from a dependent usually would not have the continuing effects which would cause it to be classified as service-connected. However, sex offenses against young children—offenses like those alleged against Solorio—have a continuing effect on the victims and their families and ultimately on the morale of any military unit or organization to which the family member is assigned. This continuing effect tends to establish service-connection.

*United States v. Solorio,* 21 M.J. 251, 256 (C.M.A.1986).

In *Solorio,* like the instant case, the prosecution had in its possession a letter from the District Attorney in Alaska which indicated that the state would defer prosecution in favor of a military trial. Although the Court of Military Appeals declined to accord great weight to this deferment, they did discuss the probability of the prosecution of the accused in those cases in which the prospective defendant and the prosecution witnesses had left the state and moved to distant locations, and what consideration the trial court should give to the situation then existing as it affects service-connection. Without specifically adopting the doctrine of "pendent jurisdiction" the Court proceeded to discuss the advantages and disadvantages of trying all the charges pending against the accused in one trial. In finally determining that there was subject matter jurisdiction

in the Alaska offenses, the Court said at page 258:

When we consider the continuing effects of an appellant's off-base misconduct on the servicemember fathers of the two victims, the resulting effect on other Coast Guardsmen and on that service, the unfeasibility of an Alaskan prosecution, and the importance to the Coast Guard of disposing of all the offenses promptly in a single trial, we are convinced that service-connection exists. . . .

Because *Solorio* involved offenses which were similar in nature to the offenses in this case we have looked to the decision in that case for guidance. In so doing, we have considered that decision, not in isolation, but in the context of the quoted language from *Schlesinger v. Councilman, supra,* and the other Supreme Court cases. Our discussion relates the specific facts before us to both the findings in *Solorio* and the three considerations emphasized in *Schlesinger.*

In *Solorio* the crimes victimized the children of military personnel. The Court of Military Appeals emphasized the pervasive impact of such crimes on the children and their families. In effect, the court concluded that the parents' morale and well-being was harmed by the offenses against their children and that the parents were, thus, also victimized by Solorio's crimes. *Solorio,* 21 M.J. at 255–256. Because the parents' morale and, in turn, their performance of duties, were affected, the crimes had an impact on military effectiveness. Moreover, victimization and kinship or strong identification with a crime victim can give rise to passionate anger and desire for personal retribution. Such reactions can be anticipated and, most certainly, can adversely affect military morale, discipline, and effectiveness in cases such as *Solorio.* Thus, the first *Schlesinger* consideration was amply satisfied in that case.

In *Schlesinger,* the court said the question of service-connection also turns on the determination of whether the military's interest in deterring the offense is distinct from and greater than that of the civilian

community. Increasing numbers of social programs within the armed forces exhibit the military's interest in deterring indecent liberties taken with minors. In this regard, however, the military's interest is no different than that of the civilian community. When, however, the crime threatens or has an impact on the discipline and effectiveness of those people who perform and support the military mission, the military's interest is distinct from the civilian interest. When such a threat or impact exists, the military's interest is greater than the civilian interest. In *Solorio,* the victimization of parents involved in the defense mission established and distinguished the military's interest in deterring the offenses.

In the case now before us, however, the victim's parent was the offender. Although we can assume that discovery and prosecution of the crimes diminished the appellant's morale and duty performance, the appellant suffered these results, not as a victim of the crime, but as an accused who faced conviction and punishment. Although the offenses reflect upon the appellant's character and discipline, these are matters which have a greater tendency to justify *in personam* jurisdiction. The offenses, themselves, however, did not have an impact on or threaten discipline among the members of the military organization nor did the offenses threaten or impair the organization's effectiveness.

It is likely that many service members who worked with the appellant or lived near him were morally offended by news of his alleged misconduct and that many scorned him. It is also likely that civilians who learned of the allegations had the same reactions. There was no evidence, however, that anyone involved in the defense mission was so personally injured as to be impaired in their work or to create a situation where discipline might be disrupted by that person's desire for retribution. On the other hand, general social scorn may occur whenever a military member commits a crime such as assault, robbery, arson, burglary, or sexual assault. This scorn may result from crimes committed

anywhere—even those which occur far from the base, victimize only people unrelated to military discipline and effectiveness, and are otherwise unrelated to the service. Such reactions which involve fear of the offender's future conduct relate to the offender and to the frightening and repugnant aspects of the offender's character which the crime has revealed. These concerns, together with the offender's military status, serve as the basis for *in personam* jurisdiction. Absent indications of unusually strong public reaction, however, general social scorn or apprehension is present in nearly every case of serious crime and does not disrupt community relations and social discipline or reduce effectiveness in the military or civilian workplace. Moreover, whether civilian prosecution or a court-martial has been initiated, military commanders are usually able to take other steps to avoid possible on-base problems. We have, therefore, concluded that absent unusual circumstances, concerns about social scorn and fear do little to determine whether a crime was service-connected.

The court in *Solorio* also concluded that service-connection need not be determined solely in terms of events as they existed at the time of the offense. Later crimes and the conditions surrounding the prosecution of those crimes could also be considered. *Solorio*, 21 M.J. at 257. As a result, in addition to the *Relford* factors, the Court of Military Appeals also premised its jurisdictional finding on considerations derived from the concept of "pendent jurisdiction." *See United States v. Lockwood*, 15 M.J. 1, 7–8 (C.M.A.1983). As to these considerations the court discussed both the unfeasibility of civilian prosecution and the Coast Guard's interest in resolving all crimes committed by Solorio expeditiously at a single trial. *Solorio*, 21 M.J. at 257–258. This aspect of the *Solorio* decision pertains directly to the question of "whether the distinct military interest can be vindicated adequately in civilian courts." *See Schlesinger*, 240 U.S. at 760, 95 S.Ct. at 1314. Therefore, in addition to our consideration

of the *Relford* factors, we have applied similar considerations in this case.

We first consider the extent to which the offenses over which the Air Force clearly has jurisdiction are related to those over which jurisdiction is in question. The Air Force, without question, has jurisdiction over the on-base adulteries which occurred in New Mexico. Both the adulteries and the indecent liberties involved the gratification of sexual desires. Moreover, the appellant's sexual partner in the adulteries, though old enough to give legal consent, was very young and was living in the appellant's home under circumstances of apparent dependence.

Because the appellant pled guilty to that offense, we do not know which witnesses the government would have called to prove that charge. At the Article 32 investigation, however, the investigating officer referred primarily to the written statement of the young woman with whom the appellant had had intercourse. We also know that, at trial, the evidence did not suggest or prove that the indecent liberties appellant allegedly took with his step-daughter happened in concert with the adulteries, were directly related to them, or were part of a similar plan or scheme. *See Solorio*, 21 M.J. at 257–258; M.R.E. 404(b). As a result of both the plea of guilty to the adulteries and the fact that the step-daughter was not involved in the adulteries, it is apparent that, had the trial only involved the on-base offenses, there would have been no need for the step-daughter to testify on the merits of the adultery charge and little likelihood that she would have been required to give "public testimony about a humiliating and degrading experience." *Solorio*, 21 M.J. 258, *citing Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).

The appellant, his wife, and all his step-children were still living in Ohio at the time of the trial. Thus, unlike the Alaskan authorities in *Solorio*, trial by Ohio authorities would not be limited by logistic difficulties. The authorities in New Mexico, however, would face such difficulties.

Moreover, in light of all the facts, prosecution of the off-base offense by authorities in New Mexico was unlikely. Although authorities in both Ohio and New Mexico provided letters indicating their intentions not to prosecute the cases, we are inclined to give greater weight to the availability of civilian courts and to legal and practical matters which civilian prosecutors would properly consider if military courts were not available. See Solorio, 21 M.J. at 256.

▮▮▮ The adulteries and the indecent liberties are, at best, tenuously related. The only pendent jurisdiction consideration which unambiguously supports a finding of service-connection is the difficulty which would face authorities in New Mexico. However, when the Court of Military Appeals made similar considerations in Solorio and Lockwood, the offenses were more clearly interrelated. In addition, although the military's interest in expeditiously disposing of related offenses "helps provide a basis for finding service-connection for the off-base offenses," Solorio, 21 M.J. at 258, quoting Lockwood, 15 M.J. at 8, a finding of service-connection has not previously rested upon the military's interest in resolving unrelated or tenuously related offenses. Moreover, such considerations pertain directly to the question of "whether the distinct military interest can be vindicated adequately in civilian courts." Schlesinger v. Councilman, supra. It, therefore, appears that military jurisdiction cannot properly be based on the difficulties of civilian courts unless a distinct and overriding military interest in deterring related offenses has first been shown. We note further that, although the lack of service-connection prevents the Air Force from trying many off-base offenses, it does not prohibit expeditious administrative discharge action in appropriate cases. Unless a crime has an impact on the military mission, morale, or discipline, we do not believe that military jurisdiction can properly be based upon the difficulty of civilian prosecution of a tenuously related offense. See Lockwood, 15 M.J. at 6.

Thus, we find that the indecent liberties offenses alleged in Charge I, Specification 2, had no impact on the discipline and effectiveness of a military organization. We also find no distinct and overriding military interest in deterring such offenses. We have, therefore, concluded that the indecent liberties offenses in both Ohio and New Mexico were not service-connected.

We must caution those who would seek to derive bright line rules from recent cases regarding service-connection. The military justice system is in the process of identifying the outer limits of military jurisdiction. Although the facts in Solorio supported a finding of service-connection regarding sex offenses against children of innocent military members, the court was careful to note that this result might not obtain if the crime were different. Solorio, 21 M.J. at 256. Similarly, although the evidence now before us fails to establish that the crimes had an impact on the discipline and effectiveness of the military organization and fails to establish a distinct and overriding military interest in deterring the offenses, we do not today decide that off-base crimes by a service member against his own family members can never be service-connected. See, e.g., United States v. Mann, 21 M.J. 706 (A.F.C.M.R.1985).

Because we have concluded that the Air Force was without jurisdiction over the indecent liberties offenses we have not considered the appellant's complaint that the evidence was insufficient to support the findings of guilty.

The finding of guilty of Specification 2 of Charge I is set aside and dismissed. The finding of guilty of adultery in Specification 1 of Charge I is correct in law and fact and is affirmed. In view of the severity of the dismissed offense, we cannot appropriately reassess the sentence. We, therefore, direct that the record of trial be returned to the convening authority for rehearing on the sentence. R.C.M. 1203(c)(2).

MURDOCK and CARPARELLI, Judges, concur.