**UNITED STATES, Appellant,**

v.

**Lieutenant Colonel Leonard S. CLARKE, Appellee,**

**Sergeant Johnny E. Dyer, Real Party in Interest.**

**CMR No. 86A–02.**

U.S. Air Force Court of Military Review.

24 Sept. 1986.

Colonel Kenneth R. Rengert and Major Joseph S. Kistler, for appellant.

Colonel Leo L. Sergi and Major William H. Lamb, for appellee.

Before HODGSON, FORAY and MICHALSKI, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

This is an appeal by the United States under Article 62, U.C.M.J., 10 U.S.C. § 862, from the trial judge's ruling dismissing a rape allegation for lack of jurisdiction. We reverse the lower court's ruling and remand for further proceedings.

The alleged victim is the spouse of an Air Force member stationed at Pope Air Force Base, North Carolina, and the incident is purported to have occurred some nine miles away in a civilian trailer park. At the time in question the husband was on temporary duty in Europe. Both the accused and the prosecutrix's husband were assigned to the same wing at Pope, although to different squadrons.

When acting on appeals pursuant to Article 62 of the Code, we must, of course, give due deference to the trial court's determination of fact *unless* it is unsupported by the evidence in the record or is clearly erroneous. *United States v. Burris*, 21 M.J. 140 (C.M.A.1985). In the case at bar the military judge made extensive factual findings. The paramount reason for dismissing the rape allegation for lack of jurisdiction was his factual conclusion that the incident had little or minimal impact on the Air Force's military mission. His position in this regard may be stated, in summarized version, as follows:

There has been no demonstrated impact of the offense on the morale, discipline, reputation or integrity of the Air Force at Pope Air Force Base, North Carolina or Fayetteville, North Carolina where Pope is located. There has been no showing that personnel assigned to Pope Air Force Base have been affected with the exception of the dependent victim, her active duty husband, and the dependent wife, co-owner of the trailer where the alleged offense took place. As far as any impact on the military mission of either the accused victim's husband's squadron on Pope Air Force, as such effect has been characterized as none or minimal.... While the victim's husband had to be returned from a TDY in Europe and his crew had to be supplemented with another military member and the acting squadron commander had to pick up the victim's husband at Charleston Air Force Base [upon his return] and counseled him and the victim, there is no evidence that this caused serious mission impact. There is little or no evidence of psychological treatment being received by either the victim, her husband or the family. In fact, all evidence points to the fact that three weeks after the incident the family was stable enough for the husband to request to be allowed to return to Europe on another TDY.

The court does conclude that there can be and that there is in this case a reasonably inferable impact on the Air Force when a dependent wife of an active duty member is sexually assaulted by another Air Force member. When the families of

an Air Force member are hurt, whether directly or indirectly, the Air Force family as a whole is hurt; but is that hurt what is meant when the courts discuss a "distinct military interest"? The court thinks not.

There has been no showing that the act alleged diminished morale, discipline or effectiveness of the military operation within the military community of Pope Air Force Base.

The record establishes that the victim's spouse is a flight engineer and a member of "a married crew", i.e., the same crew flys together as an enitity. He was in Europe on an extended TDY when told of the incident and was removed from his crew and returned to Pope. He was replaced by an engineer from another crew which was then unable to fly until they found a replacement engineer. He remained in a non-flying status at Pope for about three weeks. The incident has effected his duty performance as a flight engineer.[1]

It is clear to us and supported by the record that the combat readiness of the aircraft to which the victim's spouse belonged was significantly affected by this alleged rape—its crew integrity was destroyed. We cannot subscribe to the trial judge's apparent position that the impact of an offense occurring off-base must be of a catastrophic nature before it diminishes the military effectiveness of the unit concerned. The adage of important events being shaped by the "want of a nail" has application here. The lower court's conclusion that the alleged rape has "no demonstrated impact ... on the morale, discipline, reputation or integrity of the Air Force at Pope Air Force Base, North Carolina" is not supported by the evidence as there is compelling testimony to the contrary.

In *United States v. Lockwood,* 15 M.J. 1 (C.M.A.1983), the Court of Military Appeals made it clear that "the conduct of a service member which takes place outside a military enclave is *service-connected and subject to trial by court-martial* if it has a significant effect within the enclave." [emphasis added]. We found a "service-connection" for off-base sexual offenses against civilian dependents of military personnel in *United States v. Benedict,* 20 M.J. 939 (A.F.C.M.R.1985); *pet. granted on other grounds,* 22 M.J. 367 (C.M.A.1986). This expansion of military jurisdiction over sexual crimes against dependents of service members found approval in *United States v. Solorio,* 21 M.J. 251 (C.M.A.1986) where the Court of Military Appeals observed that sex offenses have a continuing effect on the victims and their families and ultimately on the morale of any military unit or organization to which the family member is assigned. In the trial at bar not only does the charged offense significantly impact an aircrew deployed overseas, but the victim's husband and her alleged attacker are assigned to the same installation. In this circumstance the installation commander has a legitimate concern in preserving order on the installation. We acknowledge that no on-base confrontation occurred here, but the situation is still a potential tinderbox. *United States v. Herring,* 20 M.J. 1002 (A.F.C.M.R.1985); *see also United States v. Bolser,* 22 M.J. 564 (A.F.C.M.R.1986). Based upon the facts before us we find a clear "service-connection" as the accused's actions off-base had a "significant impact on the ... combat readiness" of the Air Force. *United States v. Lockwood, supra.* The trial judge's conclusions to the contrary are not supported by the evidence of record.

Accordingly, the ruling of the military judge in granting the defense motion to dismiss the charge and its specification for lack of jurisdiction is reversed. The case is remanded to the military judge for further proceedings not inconsistent with this opinion.

Senior Judge FORAY and Judge MICHALSKI concur.

---

1. Flying personnel are given periodic tests, i.e., "check rides" to determine their qualifications to fly without supervision. Prior to the incident he has always received the highest rating; afterwards, he received a lesser rating.